**SERNA, INC., Plaintiff-Appellee Cross-Appellant,**

v.

**Paul C. HARMAN, Defendant-Appellant Cross-Appellee.**

No. 82–1165.

United States Court of Appeals, Fifth Circuit.

Sept. 20, 1984.

Cox & Smith, Inc., William R. Simcock, Stanley E. Crawford, Jr., San Antonio, Tex., for defendant-appellant cross-appellee.

Serna, Inc., San Antonio, Tex., F.J. Stenberg, San Antonio, Tex., for plaintiff-appellee cross-appellant.

Before JOHNSON, HIGGINBOTHAM, and DAVIS, Circuit Judges.

JOHNSON, Circuit Judge:

In this diversity action, defendant appeals the district court's judgment after a nonjury trial, awarding plaintiff damages of $43,825.08, plus attorney's fees and prejudgment interest, for breach of an oral agreement to purchase ten Charolais cows and their calves. Plaintiff cross-appeals, alleging that the district court erred in failing to award damages with respect to a cow and two calves whose resale violated section 2.706 of the Texas Uniform Commercial Code. This Court affirms in part and vacates and remands in part.

Plaintiff Serna is a Texas corporation and the successor of Arlitt Land and Cattle Company. Defendant Harman, a resident of the State of Pennsylvania and a dealer in Charolais cattle, became acquainted with the Arlitt family in 1976 and 1977, and purchased several full French Charolais cattle and lots of semen from them. On March 18, 1977, in San Antonio, defendant orally agreed to purchase ten full French Charolais cattle and their offspring for $125,000 from plaintiff. Pursuant to the March 18 agreement, plaintiff was to deliver all ten cows and defendant was to make payment in full by June 1977. At the time the oral contract was made, defendant had already paid plaintiff $15,000 for one of the ten cows purchased, leaving a balance of $100,000 due in June. On the date the contract was made, plaintiff delivered four cows and one calf to defendant; defendant instructed plaintiff that the cows left behind were to be bred by a particular bull.

In phone conversations in both May and June 1977, defendant told plaintiff that he could not accept delivery of the remaining cows at that time, but would be back in touch with plaintiff regarding a rescheduling of the delivery of the remaining cows. Defendant did not pay plaintiff any of the remaining balance on the contract in June 1977; nor did plaintiff deliver any cattle to defendant at that time. In the late part of June 1977, defendant received a letter signed by Bill Arlitt Sr. and an invoice which reflected the March 18, 1977, sale of the ten cows to defendant for a total price of $125,000.

In September 1977 defendant made a further payment of $20,000 pursuant to the contract, leaving a balance of $90,000. Then in October 1977 plaintiff delivered two more cows to defendant in Pennsylvania. On October 22, 1977, defendant signed an installment note payable to plaintiff in the amount of $40,000, the remaining

amount owed on the six cows which had been delivered. Although defendant refused to sign a note for the four cows which had not yet been delivered and which are the subject matter of the instant action, defendant told plaintiff he would pay for the cows when they were received. Defendant did not pay the installment note by December 31, 1977, when it was due. In August 1978, however, at a cattle sale in Memphis, Tennessee, defendant paid plaintiff $20,000 on the balance owed on the note and assured plaintiff that he still wanted the remaining four cows. In October, November, and December 1978, plaintiff wrote defendant concerning the unpaid balance of $70,000 and the cattle remaining in Texas awaiting shipment. In October 1978 the market price for full French Charolais cattle dropped significantly when one large producer flooded the market.

Plaintiff testified that on January 24, 1979, he had a telephone conversation with defendant during which plaintiff asked defendant when he would accept delivery of the four cows with their offspring which remained in Texas. Plaintiff testified that defendant responded for the first time that he was not sure that he would be able to take delivery of the remaining cattle. Plaintiff therefore considered that defendant breached the contract at this time. The district court found that defendant breached the March 18, 1977, contract by refusing to pay for the remaining four cows.

After discussions between plaintiff's and defendant's attorneys, an escrow agreement was entered into in June 1979, whereby defendant was to pay the $20,000 due on the cattle which had already been delivered to him and whereby plaintiff was to deliver the registration papers on these cattle. The escrow agreement did not discuss the cattle which had not yet been delivered. Defendant paid the $20,000 mentioned in the escrow agreement. Defendant has refused, however, to pay for the remaining four cows which are the subject of this suit.

One of these four cows with its calf was sold to another party in October 1979; a calf of this cow was sold to another party in March 1980. Plaintiff resold one other cow and her two calves to another party without notifying defendant of the sale. The final two cows were retained by plaintiff.

On appeal, defendant argues that the district court erred in: (1) holding that the Statute of Frauds was satisfied; (2) awarding resale damages under Section 2.706 of the Texas Business and Commerce Code with respect to a cow and two calves because the sale was not commercially reasonable in that it occurred two years after defendant breached the contract; (3) calculating damages for the two cows which plaintiff retained in that the court did not use the date for the "time and place for tender" as required by section 2.708 of the Code; (4) awarding plaintiff incidental damages for the period from July 1977 through January 1979; (5) awarding attorney's fees and prejudgment interest.

On cross-appeal, plaintiff argues that the district court erred in failing to award damages under section 2.708 of the Code with respect to the cow and two calves whose resale was not commercially reasonable under section 2.706.[1]

■ Initially, defendant contends that the district court erred in holding that the agreement between the parties satisfied the requirements of the "confirmation in writing between merchants" exception to the Texas Statute of Frauds.[2] This statutory exception provides:

---

1. Plaintiff also contends that he is due additional compensation for two calves which are in defendant's possession. This contention is without merit. There is sufficient evidence to support the district court's finding that these two calves were covered by the contract entered into on March 18, 1977.

2. The Statute of Frauds provides that "a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties." Tex.Bus. & Comm. Code Ann. § 2.201(a) (Vernon 1968).

Between merchants *within a reasonable time* a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of Subsection (a) against such party unless written notice of objection to its contents is given within ten days after it is received.

Tex.Bus. & Comm.Code Ann. § 2.201(b) (Vernon 1968) (emphasis added). Defendant argues that plaintiff's three and one-half month delay in confirming the oral agreement in writing was not a "reasonable time" within the meaning of section 2.201(b). Section 1.204(b) of the Code provides that "[w]hat is a reasonable time for taking any action depends on the nature, purpose and circumstances of such action." Here, the oral contract was entered into on March 18, 1977. It was confirmed by a written invoice dated June 28, 1977, sent by plaintiff to defendant. During the intervening three and one-half month period, several telephone calls confirming the agreement were made between the parties. The market price for full French Charolais cattle did not fluctuate during this period. Furthermore, there was no showing of any prejudice to defendant because of plaintiff's delay of approximately three and one-half months in sending a written confirmation. Consequently, it cannot be said that the trial court's finding that the agreement was confirmed within a reasonable time is clearly erroneous.

Defendant next contends that the district court erred in awarding resale damages under section 2.706 of the Code with respect to a cow and two calves because the sales did not take place within a commercially reasonable time after defendant breached the contract.[3] The seller's resale remedy states in pertinent part:

... Where the resale is made in good faith and in a commercially reasonable manner the seller may recover the difference between the resale price and the contract price.... Tex.Bus. & Comm. Code Ann. § 2.706(a).

... [E]very aspect of the sale including the method, manner, time, place, and terms must be commercially reasonable. § 2.706(b).

The district court found that the resale of this cow and her calves satisfied the section 2.706 requirements of "in good faith" and "in a commercially reasonable manner." Based on the record, we cannot say that the court's finding was clearly erroneous. Although this section requires the sale to be "in good faith" and "in a commercially reasonably manner," there is no express requirement that the seller not unreasonably delay.[4] In asking this Court to hold that plaintiff's delay in reselling was commercially unreasonable, defendant asks this Court to make both a legal and factual assumption: (1) that a requirement of "without unreasonable delay" is implicit in the section 2.706 requirement of commercial reasonableness and (2) that defendant breached the contract in June 1977.[5] Even were we to make the legal assumption,[6] the district court's finding that the contract was not breached or repudiated until Janu-

---

**3.** Plaintiff resold the cow and one calf at public auction on October 6, 1979; the other calf was sold on March 29, 1980.

**4.** In contrast to the seller's resale remedy provision, the buyer's cover remedy expressly requires that the buyer cover "without unreasonable delay." *See* Tex.Bus. & Comm.Code Ann. § 2.712 (Vernon 1968).

**5.** If the breach occurred in June 1977, the delay period before resale would have been between two and three years. Defendant does not argue that the delay period was unreasonable if the breach occurred in January 1979.

**6.** An absence of a requirement of "without unreasonable delay" encourages the seller to speculate at the expense of the buyer by waiting to resell. If the price falls, the seller will get more in damages. In the instant case the market price of Charolais cattle dropped significantly in October 1978 when one large producer flooded the market. Under the § 2.706 damage formula of difference between contract price and resale price, plaintiff was able to recover more in damages than if he had resold before the market price dropped.

ary 1979 is not clearly erroneous.[7] At that time, plaintiff contacted defendant who refused to pay for or to accept delivery of the four remaining cows. Up until January 1979, defendant had repeatedly assured plaintiff that he (defendant) intended to take all ten cows. The record amply supports the district court's finding that defendant did not breach the contract until January 1979. Accordingly, we must reject defendant's argument that the district court improperly awarded resale damages for commercially unreasonable sales due to unreasonable delay.

■ Thirdly, defendant argues that the district court erred in calculating hypothetical market damages for the two cows which plaintiff did not resell but retained. Defendant charges that the court did not use the market price at the "time and place for tender" as required by section 2.708. According to defendant, the time and place for tender was June 1977, in Pennsylvania. Plaintiff apparently asserts that although the original time for tender was June 1977, this date was extended by mutual consent until January 1979, the date of the breach. It is not clear whether plaintiff relies on the market price in Texas or Pennsylvania. The district court used the market price in January 1979 to compute damages, stating that January 1979 was "within a reasonable time after the time for delivery." This is not the standard required by section 2.708; rather, the section keys time and place to when tender is to occur. The district court made no finding of fact as to the "time and place for tender." Accordingly, this Court vacates the damage award pursuant to section 2.708 for the two cows which plaintiff retained and remands for a proper calculation of damages using the

market price at the time and place for tender.

■ Fourth, defendant contends that the district court erred in awarding plaintiff incidental damages for the period from July 1977 through January 1979. The seller's incidental damages, recoverable pursuant to sections 2.706 and 2.708, are defined in section 2.710 as "any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods *after the buyer's breach*, in connection with return or resale of the goods or otherwise *resulting from the breach*." (emphasis added) The plain language of the section limits incidental damages to damages occurring after the breach. In *Nobs Chemical, USA v. Koppers Co.*, 616 F.2d 212, 216 (5th Cir.1980), this Court stated: "We think it clear that § 2.710 was intended to cover only those expenses contracted by the seller after the breach and occasioned by such things as the seller's need to care for, and, if necessary, dispose of, the goods in a commercially reasonably manner." The district court found that the breach occurred when defendant refused to pay for the four remaining cows.[8] The record supports this finding. Consequently, this Court vacates the award of incidental damages and remands for a recalculation of any incidental damages incurred by plaintiff incident to the January 1979 [9] breach.

■ The district court found that the resale of one cow and two calves was not "commercially reasonable" [10] because plaintiff failed to notify defendant of the sale. Consequently, the court did not award plaintiff any damages for this cow and her two calves. On cross-appeal, plaintiff argues that, although his failure to notify

---

**7.** Although the district court made no finding of fact as to the exact date of breach, it is clear that the court found that the breach did not occur before January 1979.

**8.** It appears from the court's Findings of Fact and Conclusions of Law that the date of breach was January 1979. On remand the court should clarify its findings of fact as to the date of

breach in order to properly calculate a possible award of incidental damages.

**9.** See *ante* note 7.

**10.** Section 2.706 requires that the seller's resale be "in good faith" and "in a commercially reasonable manner." See *ante* page 6.

defendant of the sale precludes section 2.706 damages, section 2.708 damages are still available to him. This Court agrees with plaintiff that his commercially unreasonable resale does not necessarily preclude an award of hypothetical market damages. Section 2.703, which enumerates the seller's remedies, states that an aggrieved seller may "(4) resell and recover damages ... (Section 2.706); (5) recover damages for nonacceptance (Section 2.708)...." The comment to this section explains: "This Article rejects any doctrine of election of remedy as a fundamental policy and thus the remedies are essentially cumulative in nature and include all of the available remedies for breach. Whether the pursuit of one remedy bars another depends entirely on the facts of the individual case." Tex.Bus. & Comm.Code Ann. § 2.703, comment 1 (Vernon 1968). On remand, the district court should consider whether plaintiff's pursuit of his resale remedy in the instant case bars the availability to him of hypothetical market damages. If the court finds that under the facts and circumstances of this case, section 2.708 is an alternative remedy for plaintiff, then the court should calculate plaintiff's damages under that section as previously discussed, using the market value at the "time and place for tender."

Upon remand, and after recalculation of the section 2.706 damages awarded, reconsideration of the incidental damage award, and reconsideration of the availability to plaintiff of section 2.706 damages where section 2.708 damages are precluded, the district court may reconsider its award of attorney's fees to plaintiff.[11] Since the finding that the contract was breached in January 1979 is not clearly erroneous, prejudgment interest is properly calculated from that date.

AFFIRMED IN PART, VACATED AND REMANDED IN PART.

11. The court awarded plaintiff $10,000 in attorney's fees. This Court expresses no opinion as to whether an altered damage award after remand would call for a modification in the amount of attorney's fees awarded.