990 F.2d 1260
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
STB SYSTEMS, INC., Plaintiff-Appellant-Cross-Appellee,
v.
MICRON TECHNOLOGY, INC., Defendant-Appellee-Cross-Appellant.
 No. 91-36071.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 8, 1992.
Decided April 20, 1993.
 
 Before HUG, FLETCHER and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 STB Systems, Inc. ["STB"], appeals the district court's grant of JNOV and conditional grant of a new trial following a jury verdict in favor of STB. Micron Technology, Inc. ["Micron"] counterclaims on appeal that the district court erred in excluding evidence of damages on its claim against STB for anticipatory repudiation.
 
 
 3
 We reverse the district court's grant of JNOV and affirm its order giving STB the option of either accepting a remittitur or a new trial.
 
 
 4
 * In its original action against Micron, STB sought actual and punitive damages for the alleged breach of several contracts providing for the sale of various types of dynamic random access memory [DRAM]. After evidentiary rulings and a partial directed verdict in the district court, only the alleged breach of two substitute purchase orders was submitted to the jury.
 
 
 5
 Micron filed a counterclaim in district court seeking damages from STB for the alleged anticipatory repudiation of a two-year contract and $120,772.12 representing the price of DRAM sold and delivered but not paid for by STB. At trial, STB stipulated that it owed this amount to Micron and STB's jury award to STB was subject to an offset of this amount. Micron's claim of anticipatory repudiation was not submitted to the jury because the district court found Micron had failed to establish damages.
 
 
 6
 The jury found Micron liable for breach of both the express terms and implied covenants of the substitute purchase orders and awarded STB damages of $3,179,042.00.
 
 
 7
 Micron moved for JNOV and, alternatively, for a new trial on liability, damages, and the district court's failure to submit Micron's claim for anticipatory repudiation to the jury. The district court granted Micron's motion for JNOV and set aside the jury verdict in its entirety. The district court also conditionally granted Micron's alternative motion for a new trial on the basis of the damages award to STB, subject to a remittitur by STB of all but $104,552 of STB's damages.[1]
 
 II
 
 8
 STB argues that the district court's grant of JNOV was improper because there was enough evidence presented at trial to support the jury's finding that Micron breached both an express term and the implied covenant of good faith and fair dealing of the substitute purchase orders. We agree.
 
 
 9
 "A JNOV is proper when the evidence permits only one reasonable conclusion as to the verdict. The jury's verdict must be supported by substantial evidence in order to stand. We view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. A JNOV is improper if reasonable minds could differ over the verdict." Venegas v. Wagner, 831 F.2d 1514, 1517 (9th Cir.1987) (citations omitted).
 
 
 10
 The evidence presented at trial which supports the jury verdict includes testimony that while Micron wanted to and thought it could fulfill the substitute purchase orders, its anticipated production of 64K X 4 DRAM was "completely sold out" at the time it accepted the orders. There was also evidence that Micron failed to make earlier scheduled deliveries of DRAM, leading to a rescheduling of the substitute purchase orders at Micron's request.
 
 
 11
 The evidence showed that STB was having cash flow difficulties and that the day before the substitute purchase orders were rescheduled, Micron unilaterally reduced STB's credit limit, without STB's knowledge. While Micron allowed STB to run balances over its reduced credit limit, Micron eventually informed STB that its purchases would have to be "COD, prepay, certified funds."
 
 
 12
 While much of this evidence was disputed, the jury could reasonably have found that Micron entered the contracts without intent to perform them or in reckless disregard of its prospective inability to perform them or that Micron was dishonest in seeking the rescheduling, because it did not disclose that it had reduced STB's credit limit, or that it was Micron that breached the contract by demanding payment COD. We find that there was sufficient evidence to support the jury's special verdict finding that Micron breached both an express term and the implied covenant of good faith and fair dealing of the substitute purchase orders.
 
 III
 
 13
 STB also contends that the district court erred in conditionally ordering a new trial. Since we conclude that the damage award in this case was clearly against the weight of the evidence, we hold that the district court did not abuse its discretion in ordering a new trial. McGhee v. Arabian Am. Oil Co., 871 F.2d 1412, 1420 (9th Cir.1989).
 
 
 14
 STB's damages claim was based almost entirely on consequential damages. Idaho Code § 28-2-715(2) (1980) sets out the elements of a claim for consequential damages and provides that:
 
 
 15
 Consequential damages resulting from the seller's breach include
 
 
 16
 (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover....
 
 
 17
 The district court found that STB failed to show causation and the unavailability of cover or other mitigation of damages as required under this statute. We agree.
 
 
 18
 STB's expert, Kenneth Hooper, testified that Micron's failure to deliver DRAM forced STB to divert inventory DRAM[2] and prevented the production of 25,000 VGA boards resulting in a loss of profits of $767,111. Hooper testified that these lost profits, accruing over a three-month period, caused financial distress to STB which in turn led to the loss of original equipment manufacturer accounts, other important accounts, layoffs and other losses totaling over $3 million.
 
 
 19
 STB had the burden of establishing that these losses were caused by Micron's breach of the substitute purchase orders. Hooper testified that STB's financial deterioration, caused by Micron's failure to deliver DRAM, prevented STB from successfully bidding on various projects with large original equipment manufacturers. However, there is no evidence to support STB's assertion that it lost the bids because of its financial condition. In fact, the only evidence from any manufacturers as to why they rejected STB's bids shows it was because a competitor of STB had a patent on a key component. We agree with the district court, that any damages award based on the loss of these accounts must be reversed.
 
 
 20
 We also agree with the district court that the damages award based on STB's claim that it had to lay off employees and incur severance costs because of Micron's failure to deliver DRAM must be reversed since the evidence showed that STB was contemplating personnel cuts anyway and there is no evidence to support STB's contention that the layoffs were caused by Micron's breach.
 
 
 21
 While Micron had the burden of showing that STB could in fact mitigate its losses by purchasing DRAM on the open market, Clark v. International Harvester Co., 581 P.2d 784, 805 (Idaho 1978), we agree with the district court that this burden was met. Hooper, testified that the market price of DRAM was dropping off between March and June and that DRAM were available in March, April and May from original equipment manufacturers. Therefore, it appears that STB could have covered or mitigated its losses by purchasing DRAM on the open market to replace the VGA board DRAM that were diverted to EGA board production.
 
 
 22
 STB argues that it was not required to attempt to cover when Micron failed to make its first delivery, in March, because Micron's agreed to rescheduled the missed deliveries. STB then argues that by the time Micron repudiated the rescheduled contract by requesting COD in May, the damage to STB was done and it could have done little to mitigate its losses. This argument is not persuasive because regardless of whether STB claims Micron's breach occurred in March or in May, the testimony from trial established that there were DRAM available on the open market at both of these times.
 
 
 23
 We find that the district court did not abuse its discretion in ordering a new trial on the ground that the jury verdict on damages was against the weight of the evidence. Its order granting a new trial unless STB accepts a remittitur is affirmed and we remand for a new trial on the issue of damages.
 
 IV
 
 24
 STB alleges that the district court erred in excluding testimony of STB's future damages stemming from Micron's breach of the substitute purchase orders and in directing a verdict in favor of Micron on STB's punitive damages claim. STB does not request a new trial on this basis but submits that if this court decides to order a new trial, these issues will come up again and the district court's rulings should be corrected.
 
 
 25
 Evidentiary rulings are reviewed for a clear abuse of discretion. McGonigle v. Combs, 968 F.2d 810, 818 n. 6 (9th Cir.), cert. dismissed, 113 S.Ct. 399 (1992). We review a directed verdict under the same standard applied by the district court and a directed verdict should be found if the evidence permits only one reasonable conclusion as to the verdict. Id. at 816.
 
 
 26
 Regarding future damages, the district court excluded testimony that STB would continue to suffer damages after the date of the trial. We agree with the district court that this testimony did not establish future damages with reasonable certainty, and find that it did not abuse its discretion in excluding this testimony.
 
 
 27
 Regarding punitive damages, STB had the burden of proving by a preponderance of the evidence that Micron engaged in conduct that was "oppressive, fraudulent, wanton, malicious or outrageous." Idaho Code § 6-1604 (1990). We agree with the district court, that STB failed to show malicious or outrageous conduct by Micron.
 
 V
 
 28
 Micron also argues a new trial is warranted on the ground that the district court improperly refused to admit its summary regarding damages resulting from STB's alleged breach of the two year contract. While the district court did not expressly rule on this motion, it implicitly rejected this motion by granting a conditional new trial only on the issue of damages.
 
 
 29
 Evidentiary rulings are reviewed for a clear abuse of discretion, McGonigle v. Combs, 968 F.2d at 818 n. 6, however, a district court's decision to exclude evidence which requires application of state law is reviewed de novo. Salve Regina College v. Russell, 111 S.Ct. 1217, 1221 (1991).
 
 
 30
 Micron's counterclaim in district court alleged that STB had anticipatorily repudiated the two year contract. During trial, Micron offered into evidence an exhibit computing damages for STB's alleged breach of the two year contract based on the difference between the two-year contract price and "market price" for 64K X 4 DRAM for the months of July 1989 through December 1990. The "market place" was derived by Micron from data reflecting its own sales of 64K X 4 DRAM from July to December 1990. This damage summary was admitted into evidence, however, Micron later withdrew the damage summary when it discovered the summary contained some possible inaccuracies.
 
 
 31
 Micron then offered proposed exhibit 602, a substitute damage computation representing the difference between contract and "market price," using a "market price" derived from STB's "receipt history" in evidence as Exhibits 475 and 583. Micron argued that Exhibit 475 showed the price STB paid for DRAM during the relevant months, establishing a "market price."
 
 
 32
 STB objected to the admission of this exhibit on the ground that the proffered evidence did not reflect the market price of the goods in question "at the time and place for tender" as required by Idaho Code § 28-2-708(1) (1980).
 
 
 33
 The district court excluded the exhibit on the ground that the two year contract provided an "exclusive" remedy requiring Micron to prove that it sold the DRAM for less than it would have received from STB. While the district court may have erred in basing the exclusion of the damage summary on this ground, we agree with STB that the exhibit was nonetheless properly excluded because it did not provide proper evidence of "market price" as required by Idaho Code § 28-2-708(1). Idaho Code § 28-2-708(1) provides that "the measure of damages for nonacceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price."
 
 
 34
 Cases interpreting UCC § 2-708(1) have been strict in requiring evidence of the market place "at the time and place for tender." See e.g., Serna, Inc. v. Harman, 742 F.2d 186, 190 (5th Cir.1984) (vacating damages award based on market price "within a reasonable time after the time for delivery"); Trans World Metals, Inc. v. Southwire Co., 769 F.2d 902, 910 (2d Cir.1985) (use of projected rather than actual market price was "inappropriate," but error was waived by failure to object at trial).
 
 
 35
 Alternative methods can be used to establish market price under Idaho Code § 28-2-723(2) (1980), if "evidence of a price prevailing at the times or places described in this chapter is not readily available." However, in this case, Micron's offer and subsequent withdrawal of exhibit 620 suggests that evidence of the market price at the time and place of delivery was available to Micron but Micron failed to properly prepare and present that evidence.
 
 
 36
 Since "market value" could have been properly calculated by Micron simply by correcting the inaccuracies in its original exhibit, no reason was shown to turn to an alternative measure of market value, and the district court did not abuse its discretion by refusing to order a new trial on this basis.
 
 VI
 
 37
 Since we have reversed the district court's grant of JNOV but affirmed its grant of a new trial on damages, there is no "overall prevailing party" and each party is ordered to pay its own costs and attorneys fees. Idaho Code § 12-120(3) (1990); International Eng'g Co. v. Daum Indus., Inc., 630 P.2d 155, 158-59 (Idaho 1981).
 
 REVERSED IN PART
 AFFIRMED IN PART
 
 38
 and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Circuit Rule 36-3
 
 
 [1]
 Because of the offset award to Micron, this would result in a net recovery to Micron of $16,220.12
 
 
 [2]
 The DRAM which STB diverted were about $104,552 more expensive than the DRAM under the substitute purchase orders. Micron concedes that this figure is a legitimate measure of damages to STB