## No. 16,597.

UINTA OIL REFINING COMPANY ET AL. *v.* LEDFORD.

(244 P. [2d] 881)

Decided April 28, 1952.   Rehearing denied May 26, 1952.

Mr. CLARENCE O. MOORE, Messrs. RICHARDS & BIRD, for plaintiffs in error.

Messrs. IRELAND, IRELAND, STAPLETON & PRYOR, for defendant in error.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the court.

IN the trial court Uinta Oil Refining Company to which we hereinafter refer as plaintiff or Uinta, was plaintiff, and Ledford, herein designated as defendant or by name, was defendant.

Plaintiff, the owner of an oil refinery at Jensen, Utah, and producer of petroleum products, brought this action in March, 1949 to recover from Ledford, $3,548.66 and interest, alleged to be a balance due it for petroleum products sold by plaintiff to defendant. While defendant in his answer denied this liability, on the trial it was conceded that he was so indebted, and the trial court directed a verdict for plaintiff on its complaint. Defendant filed a counterclaim demanding damages totaling $29,400 based on an alleged breach by plaintiff of an exclusive

distributorship and sales contract between plaintiff and himself. The action was tried to the court and a jury, the latter returning the following verdict: "We, the jury * * * find for the defendant and against the plaintiff on the counterclaim, and fix his recovery as follows: For loss of profits and credits for oil sold not by defendant, $4,864.89. On account of purchase of equipment $3,-223.56." Judgments were entered on the respective verdicts, and plaintiff prosecutes this writ of error to review the judgment against it on the counterclaim.

Defendant in his counterclaim alleged in substance that about October 31, 1947, plaintiff and defendant entered into an oral contract whereby plaintiff made defendant the sole and exclusive distributor and sales agent of plaintiff's petroleum products in all of Rio Blanco county and a part of Moffat county, Colorado; that relying on said contract defendant purchased $17,000 worth of equipment, part of which plaintiff induced defendant to buy from it, to enable him to serve his territory. Defendant alleged that by the contract he was to be credited with all sales made direct by plaintiff at its refinery to purchasers from defendant's territory, and that defendant would at all times be allowed the distributors price for petroleum products at plaintiff's refinery located in Utah. Defendant also alleged that shortly after the contract was entered into, plaintiff failed to give him the sole and exclusive distributors and sales rights in said territory, and sold its petroleum products to many buyers in defendant's territory at the same or a lesser price than defendant was paying plaintiff therefor, and that plaintiff directly, and through others, competed with defendant in said exclusive territory and at its refinery. Defendant sought $17,000 damages for expenditures made by him for equipment, in reliance on the contract; and for $12,400 alleged net profit on sales which plaintiff had precluded defendant from making, and on direct sales made by plaintiff at its refinery, to customers in

defendant's exclusive territory. The allegations of the counterclaim were put in issues by plaintiff, and having been submitted to the jury for determination, its verdict was returned as above recited.

The agreement to which reference is made in the counterclaim was oral and was to continue so long as mutually satisfactory to both parties. It appears that another individual had previously represented plaintiff in this Colorado territory, and that relationship having terminated, plaintiff had on hand certain equipment incident to the distributorship. On entering into the arrangement with defendant, Uinta sold to him this equipment for four thousand dollars as a part of the contract arrangement.

While many points are specified for reversal of the judgment on the counterclaim, we need only consider the following questions: 1. Was the contract between plaintiff and defendant terminated in fact or in law? 2. If not terminated, did plaintiff breach the contract, and if the contract was breached by plaintiff, what is the proper measure of defendant's damage?

By its answer to the counterclaim, plaintiff did not assert that it had terminated the agreement with defendant. It alleged that a few days subsequent to the original contract it was *modified* by "eliminating from the territory in which defendant was to operate Wiley's resort and the Kerr-McGee camp." This was denied by defendant.

In the instant case the question of whether the contract had been modified, as claimed by plaintiff, was properly submitted to the jury under instructions which correctly stated the law, and the jury by its verdict resolved those contentions adversely to plaintiff.

Counsel for plaintiff contend that its agreement with defendant was terminable at will, and that when it withdrew certain areas from defendant's territory it thereby abrogated the contract and proposed a new arrangement

on the basis of an "open market." It cannot, under the pleadings and facts in this case, be successfully asserted that plaintiff terminated the contract either in fact or in law. The oft-repeated promises of Egan, its sales manager, that Uinta would adjust the matter and restore the two areas to defendant so that he could furnish petroleum products to these customers, make the cases cited by plaintiff's counsel inapplicable. In the cases relied upon by them it definitely appears that the principal insisted on his right to abrogate the agent's contract, and did not promise an adjustment of the dispute, or give assurance of return to the original agreement.

Here it appears that Egan, being duly authorized by plaintiff, made the oral contract in question, and apparently others in the Uinta company at its home office had made some arrangement with one Goodrich to handle plaintiff's products in the two areas mentioned. Patiently Ledford awaited the day when he could serve these areas, but that day never came, despite the repeated assurances of Mr. Egan.

On this review we must consider the evidence in the light most favorable to the defendant who prevailed on his counterclaim. It appears that plaintiff undersold defendant when customers from defendant's territory went to the refinery. That plaintiff knew these customers were from defendant's territory, is beyond dispute. More than a year after the agreement was made, plaintiff recognized its existence in a letter to defendant in which the only reservation recited was that it would "sell direct to any co-operative organization" in defendant's area. The evidence discloses no sales to any "co-operative."

The trial judge remarked when ruling on the motion for a new trial, "the breaches as and when they occurred, were candidly recognized and are now conceded to be such, by this plaintiff." The record amply justifies this observation. "The grant of an 'exclusive

agency' to sell the products of a manufacturer or dealer in a specific territory is ordinarily interpreted as precluding competition by the principal in any form within the designated section." Restatement of The Law—Agency, p. 1058, §449b.

■ Proof of sales made in the agreed territory by the principal or another representative appointed by him after the breach, may be such as to make a reasonably accurate estimate of the profits the agent has been prevented from making. *Yaguda v. Motion Picture Publications, Inc.* 140 Cal. App. 195, 35 P. (2d) 162. "Absolute certainty or mathematical exactness [in determining the damages] is not required." 3 C.J.S., p. 343.

■ "According to most cases the measure of damages for the breach of a contract giving an agent an exclusive selling territory, where the principal personally or by another agent invades such territory or revokes the contract of agency, is the amount of profits, commissions, or discounts of which the agent is deprived by the action of the principal, excluding, however, profits that are too remote or are merely speculative. 2 Am. Jur. 241, §309.

*Mueller v. Bethesda Mineral Spring Co.,* 88 Mich. 390, 50 N.W. 319, was a case where the company entered into a contract with Mueller making him the exclusive agent for its mineral water in the City of Detroit. Later the company breached the contract by appointing another distributor. Mueller sued for damages, alleging loss of profits. The court held, "The measure of plaintiff's damages was the profits which Mueller might have realized if defendant had performed its contract." The same measure of damages is announced in *Hichhorn, Mack & Co. v. Bradley,* 117 Iowa, 130, 90 N.W. 592.

■ Damages must be such as may reasonably be supposed to have been within the contemplation of the parties to the agreement at the time of the execution thereof, and the natural and proximate consequences of a breach thereof.

"Where the cause and existence of damages have been established with sufficient certainty, recovery will not be denied because they are difficult of ascertainment." *Lewis-Hale Coal Co., Inc. v. Enterprise Fuel Co.* 33 F. (2d) 727. In this case the trial court held that "the agent was entitled to recover on its counterclaim full commissions on all sales made in the territory covered by the contract whether handled by it or not, but was entitled to no further damages." This ruling was approved by the Circuit Court of Appeals of the Fourth Circuit.

It cannot successfully be contended that proof of what was actually sold at the Kerr-McGee Camp, the Wiley Resort area, and at the refinery, prior to the trial of this action was uncertain or speculative. Here it was admitted that the proof of gallonage sold by plaintiff in these areas was correct, and no prospective damages were demanded or even mentioned in the instructions given the jury.

It is true that one having an exclusive sales agency in a specified territory cannot recover profits or commissions on a sale made by another outside that territory simply because the vendee is a resident of the territory. But here we have testimony of defendant that he was to be credited with four cents per gallon on all gasoline sold at the refinery to persons resident in defendant's area. Ample opportunity was afforded plaintiff to establish transportation costs on this gasoline, and other expenses of defendant in transacting business, in order to enable the jury to determine the net profit on these refinery sales, which defendant would have realized had plaintiff not breached the contract.

We hold that defendant may, on his counterclaim, recover net profits on all sales made by plaintiff, or others thereunto authorized by plaintiff, in the territory covered by defendant's contract during the term thereof and prior to the commencement of this action.

When defendant made his investment in trucks,

tanks and equipment in order to carry out his contract with plaintiff, he did so at his own risk, knowing that these items would constitute at least a part of his cost of doing business under the agreement. Under the instructions of the trial court, the jury was directed to deduct from the margin of profit allowed defendant under the agreement, the cost of operating his business, consequently when the trial court allowed defendant to recover damages on account of "purchase of equipment" it in effect allowed double damages. This was error.

Under the facts, as disclosed by this record, defendant was entitled only to recover under his counterclaim his net profits on sales made in his territory by others than himself plus the net margin allowed him by plaintiff for sales at the refinery to customers in defendant's territory. We conclude that that portion of the judgment based on the verdict relating to $3,223.56 "on account of purchase of equipment," must be set aside.

In passing, we note another point specified by plaintiff which is captioned, "the rulings of the court exhibited passion and prejudice." We have carefully examined and considered the entire record and cannot find that the trial judge did other than accord both plaintiff and defendant a fair and impartial trial. In a review, general allegations of passion and prejudice on the part of the trial judge are not helpful, and necessitate most careful scrutiny of the record on our part. We find nothing in this record to justify the assertion that the learned trial judge in this case failed to accord plaintiff an opportunity to present all pertinent facts, and nothing in his conduct of the case prejudiced plaintiff.

Under proper instructions, all issues of fact were determined adversely to plaintiff. We are of the opinion that the jury's award of $4,864.89 for loss of profits sustained by defendant during the term of the contract, is supported by the evidence.

The cause is remanded with instructions to vacate that

portion of the judgment on the counterclaim relating to $3,223.56 "on account of purchase of equipment," and the balance of the judgment is affirmed.

MR. JUSTICE STONE and MR. JUSTICE CLARK not participating.