563 F.Supp. 430 (1983)
The GREAT WESTERN SUGAR COMPANY, Plaintiff,
v.
MRS. ALLISON'S COOKIE COMPANY, et al., Defendants.
Nos. 82-1239C(C) to 82-1242C(C).
United States District Court, E.D. Missouri, E.D.
March 22, 1983.
On Motions to Exclude Testimony April 26, 1983.
*431 Keith E. Davis, Dallas, Tex., David Harlan, St. Louis, Mo., for plaintiff.
William J. Travis, Mark W. Saurdi, St. Louis, Mo., Andrew Rimmel, Clayton, Mo., for defendants.

MEMORANDUM
MEREDITH, District Judge.
This matter is before the Court upon defendants' motions for summary judgment and upon defendants' motions to strike the affidavit of C. George Stevens. For the reasons set forth below, defendants' motions for summary judgment will be denied. Defendants' motions to strike will be granted in part and denied in part.
Plaintiff Great Western Sugar Company brought separate actions for breach of contract against defendants Mrs. Alison's Cookie Co. ("Mrs. Alison's"), St. Louis Bakers Cooperative Association ("Bakers' Coop"), Sugar Distributors, Inc. and Halben Food Mfg. Co., Inc. ("Halben"). Thereafter these four cases were consolidated. The Court's jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332(a).
The relevant facts are as follows. In October of 1980 each defendant entered into a separate contract with plaintiff whereby each defendant agreed to purchase from plaintiff a specified amount of sugar, measured in hundredweights, and plaintiff agreed to sell the same to each defendant for $47.00 per hundredweight.[1] Each such contract provided that deliveries were to be made during January, February and March of 1981 ("first quarter contracts").
Each defendant contends that on or about January 23, 1981, Chuck Walton ("Walton"), then plaintiff's industrial sales manager, notified Harry Talbot ("Talbot"), then plaintiff's sugar broker in Eastern Missouri, that the first quarter contracts had been modified from a set contract price of $47.00 per hundredweight to the daily selling price on the dates when the defendants placed each order. Defendants allege that Talbot then notified them of the price modifications and that they made purchases on the contracts as modified. Approximately three weeks after the contracts had been modified, Walton contacted each defendant and claimed that a mistake had been madethe price term had never been modified.
As grounds for summary judgment, defendants contend that, as a matter of law, they have not breached their first quarter contracts with plaintiff. Each defendant asserts that it made purchases pursuant to its modified first quarter contract and thereby fulfilled its contractual obligations to plaintiff. They conclude that plaintiff's attempt to disavow the contract modifications came too latethe price modifications had already been accepted and acted upon by defendants.
*432 Plaintiff argues that it never agreed to any price modifications. In particular, plaintiff contends that Walton did not notify Talbot of any such price modifications; that Walton did not have the authority to set prices; that Talbot did not have the authority to modify a contract on behalf of plaintiff; and that each defendant knew that Talbot did not have the authority to modify their contracts. Plaintiff asserts that, in any event, it notified each defendant of its mistake within a reasonable time of learning that said defendants were under the mistaken impression that the contract price had been modified. Plaintiff also asserts that purchases of sugar made by defendants during the first quarter of 1981 were "spot" purchases at the daily selling price and were not purchases made pursuant to defendants' separate contracts with plaintiff. Plaintiff concludes that each defendant is, therefore, in breach of contract.
The Eighth Circuit has frequently admonished that summary judgment is an extreme remedy. It should be granted only if the pleadings, affidavits, and admissions show that there is no disputed issue of material fact and that the plaintiff is not entitled to recover under any circumstances. Ralph's Distributing Co. v. AMF, Inc., 667 F.2d 670, 672 (8th Cir.1981). Moreover, all evidence must be viewed in the light most favorable to the party opposing the motion. Id.
The pleadings, affidavits and depositions in the present case do not meet this standard. In particular, there remain genuine issues of fact pertaining to whether Walton had the authority to modify the first quarter contracts, whether Walton communicated said price modifications to Talbot with instructions for Talbot to so notify defendants, and whether defendants reasonably believed that their contracts had been modified and authorized by plaintiff. Each of these disputed facts materially bears on the ultimate issue in this case.
In sum, the present record, viewed in the light most favorable to the plaintiff and with all reasonable inferences made in its favor, raises triable issues with respect to plaintiff's cause of action against defendants. Therefore, summary judgment is inappropriate.
As an alternative ground for summary judgment, defendants Mrs. Alison's, Halben and Sugar Distributors argue that even if the Court were to find that defendants breached their respective contracts, plaintiff is barred from recovering damages from defendants. Specifically, defendants contend that plaintiff did not notify defendants of its intent to resell the sugar allegedly wrongfully refused by defendants and that plaintiff's failure to so notify defendants precludes it from recovering damages under Mo.Rev.Stat. § 400.2-706(3).
This contention is premature for two reasons. First, it is not clear on the present state of the record whether plaintiff did in fact provide defendants with adequate notice of its intent to resell the sugar wrongfully refused by defendants. Second, the Missouri Uniform Commercial Code specifically rejects the doctrine of election of remedies. Mo.Rev.Stat. § 400.2-703. Therefore, even if plaintiff is barred from pursuing the remedies available to it under § 400.2-706, it cannot be said at this juncture that plaintiff cannot pursue other remedies available to it under the Code. Accordingly, defendants' motions for summary judgment on the issue of damages must also be denied.
Defendants also move to strike the affidavit of C. George Stevens which has been submitted by plaintiff in support of its memorandum in opposition to defendants' motions for summary judgment. Fed.R. Civ.P. 56(e) requires that all affidavits submitted with respect to summary judgment motions "shall be made on personal knowledge...." Portions of Mr. Stevens affidavit are based only on information and belief and not on personal knowledge. Therefore, paragraph two of that affidavit will be stricken for failure to comply with Rule 56, Fed.R.Civ.P.

ON MOTION TO EXCLUDE TESTIMONY
This matter is before the Court upon defendants' joint motion in limine to exclude *433 testimony concerning alleged lost profits, reasonable overhead, storage charges, handling charges, prejudgment interest, costs and attorney's fees sustained by plaintiff as a result of defendants' alleged breach of contract. For the reasons set forth below, this motion will be granted in part and denied in part.
This cause of action involves the sale of goods and is, therefore, governed by Article II of the Uniform Commercial Code ("UCC"), § 400.2-101 et seq. The Uniform Commercial Code § 400.2-708(2), Mo.Rev. Stat., provides that an injured plaintiff may recover lost profits, including reasonable overhead, and incidental damages in circumstances where the alternative UCC remedies would not restore plaintiff to its position but for the breach of contract. Plaintiff, as a "lost volume" seller,[1] falls squarely within this provision of the UCC. See, e.g., White & Summers, Uniform Commercial Code, § 7-9 at 274 (2d Ed.1979); Famous Knitwear Corp. v. Drug Fair, Inc., 493 F.2d 251, 253-55 (4th Cir.1974).
Defendants contend, however, that this Court should suppress plaintiff's evidence pertaining to lost profits because plaintiff failed to plead lost profits with the particularity required by Rule 9(g), Fed.R. Civ.P. It is true that lost profits, as special damages, should be pleaded with particularity. However, this Court has discretion to permit plaintiff to amend its complaint if the interests of justice so dictate. Parsons Construction Co. v. Missouri Public Service Co., 425 S.W.2d 166 (Mo.1968). This Court is of the opinion that plaintiff should be permitted to amend its complaint to conform to the evidence put forth at trial concerning its items of special damages, such as lost profits. Defendants will not be prejudiced thereby and the interests of justice will be served.
Defendants argue that certain items of damages which plaintiff claims are not recoverable as "incidental damages" under the UCC. Incidental damages are defined in Section 2-710 of the UCC, § 400.2-710 Mo.Rev.Stat., to include:
"any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach."
This Court agrees with defendants insofar as plaintiff claims attorney's fees as incidental damages. The Uniform Commercial Code clearly does not contemplate recovery of attorney's fees as incidental damages recoverable in an action for breach of contract. Moreover, the parties in this case have not agreed to attorney's fees. Therefore, plaintiff cannot recover its attorney's fees from defendants and all evidence pertaining to same will be excluded at trial.
Plaintiff also claims finance charges, storage charges and handling charges as incidental damages sustained by it as a result of defendants' breach of contract. These items of damage fall within the ambit of incidental damages defined by Mo. Rev.Stat. § 400.2-710 and are recoverable. However, these damages must be confined to plaintiff's expenses incurred in the care and custody of those goods which defendants wrongfully refused. Plaintiff's evidence must reflect such expenses accordingly.
Finally, defendants contend that payments which plaintiff is required to make to its beet growers are not recoverable as "reasonable overhead" or "incidental damages". This Court agrees. Reasonable overhead includes those costs which plaintiff incurs irrespective of the volume of its sales and despite the buyers' breach of contract. Such costs would include, for example, rent, property taxes, salaries and the like. In the present case, plaintiff is required *434 to pay its beet growers a percentage of its average net return on sales of refined sugar per hundredweight. Thus, the amount owed the beet growers is not a fixed costit fluctuates with the volume and price of plaintiff's sales. This cost is not overhead but, rather, a direct cost tied to the volume of plaintiff's output. Accordingly, plaintiff cannot recover such payments as "reasonable overhead".[2]
For similar reasons, this cost is not recoverable as an item of "incidental damages". This cost is not an item of damage which plaintiff sustained as a result of defendants' alleged breach but, rather, a direct cost bearing on the profit it expects to receive under each contract it enters into. This cost is unrelated to defendants' alleged breach.
In sum, plaintiff will be permitted to offer into evidence those exhibits which reflect its lost profits, including reasonable overhead as defined in this Order, together with any incidental damages it incurred as a direct result of defendants' alleged breach of contract.
NOTES
[1] Plaintiff's cause of action against Mrs. Alison's also involves breach of contract pertaining to deliveries to be made during the fourth quarter of 1980.
[1] A lost volume seller is one whose supply of goods exceeds the demand. Because he is in a position to satisfy all buyers who are willing to deal with him, other damage provisions of Article Two do not adequately compensate him for the profits lost as a result of the lost sales opportunity.
[2] It should be noted that the amount plaintiff is required to pay its beet growers, as a direct cost, must be subtracted from the contract price of each contract to determine plaintiff's profit under each such contract. See Famous Knitwear Corp., supra. Therefore, evidence reflecting such payments would be admissible for the purpose of proving plaintiff's expected profit under each contract.