JELEN AND SON, INC., Petitioner,

v.

Samson W. BANDIMERE and Julia
Bandimere, Respondents.

No. 89SC544.

Supreme Court of Colorado,
En Banc.

Dec. 10, 1990.

Holley, Albertson & Polk, P.C., George
Alan Holley, Steven J. Niparko, M. Susan
Lombardi, Golden, for petitioner.

James H. Downey, Englewood, for re-
spondents.

Justice ERICKSON delivered the
Opinion of the Court.

We granted certiorari to review the un-
published opinion in *Bandimere v. Jelen
and Son, Inc.,* No. 88CA1028 (Colo.App.
Aug. 10, 1989). The respondents, Samson
and Julia Bandimere, were charged in Jef-
ferson County with criminal violations for
unlawful transportation of hazardous mate-
rial. Those charges were dismissed after
Bandimere agreed to pay the costs associ-
ated with the hazardous material clean-up.
Bandimere then brought suit against the
petitioner, Jelen and Son, Inc. (Jelen),
claiming that Jelen was liable for the clean-
up costs plus attorney fees Bandimere
spent in defending the criminal action. A
jury returned a verdict for Bandimere, and
awarded $14,108.58, including attorney
fees. The court of appeals affirmed the
award with the exception of attorney fees.

We granted certiorari to determine
whether a seller of hazardous chemicals
may recover incidental damages for haz-
ardous material clean-up resulting from a
spill of the chemicals during delivery but

prior to the buyer's rejection under section 4–2–710, 2 C.R.S. (1973), when the buyer fails to comply with the terms of the contract.

## I

Samson Bandimere owned property in Jefferson County, which consisted of approximately four acres, two large warehouse-type buildings, and several small buildings. From the late 1970s until September 1985, Bandimere rented space on the land to a succession of tenants engaged in mining-related business operations including the alleviation and recovery of precious metals. The last tenant defaulted in 1985, and Bandimere took possession of the property, some equipment, and barrels of chemicals on the premises, to offset the money owed for back rent. Bandimere testified that he was unsure what some of the equipment was, or what the barrels contained, other than liquids or chemicals of some type. Bandimere was told, however, by one of the ex-tenants that he probably had "an EPA problem" with the barrels. There were approximately 30–40 fifty-five gallon barrels, most without lids and many that were corroded or leaking. Some of the barrels had labels, but many did not.

Bandimere did not have the contents of the barrels examined by experts, but sought to sell the equipment and barrels as a single lot. In December 1985, Bandimere contacted Michael Jelen, the president of Jelen and Son, which specialized in the purchase and resale of mining equipment. Jelen examined the items on Bandimere's property, and agreed to exchange a compressor Bandimere wanted for the materials, equipment, and barrels on the premises and $3,500. The agreement was finalized on December 13, 1985, at Jelen's offices after Bandimere inspected the compressor. An invoice prepared by Jelen and signed by Bandimere is the primary document that reflects the trade of a compressor for mining and refining equipment, thirteen 55–gallon barrels of concentrate and chemicals

with open tops, and $3,500. Bandimere later testified that the understanding was that Jelen was to remove everything, including the barrels, although Jelen's wife, who was the sole shareholder and officer manager of Jelen and Son, testified that the agreement called for Jelen to take only the equipment and thirteen barrels of concentrate, which she described as black sandy material used in mining.[1]

Bandimere also testified that Jelen agreed to retrieve the equipment and barrels from Bandimere's property, although Jelen disputed that claim. Regardless of the original understanding, some time in late December Bandimere agreed, in a telephone conversation with Jelen, to deliver the items to one of Jelen's properties located on North Indiana Street in Jefferson County.

Approximately one month later, on the morning of January 28, 1986, Bandimere loaded the barrels on two flatbed trucks, and he and an employee drove to Jelen's property intending to make delivery of the barrels, many of which were still leaking and open. As Bandimere approached Jelen's property, he apparently got lost and turned around in the parking lot of the local fire department, approximately one block from Jelen's yard. The fire marshall, Henry Binder, happened to glance out his window and noticed the trucks with liquid splashing out of the barrels. Binder was an acquaintance of the Jelens, and contacted Rosemary Jelen after he saw the trucks enter her property. After being told Michael Jelen was out of town, and that she was not expecting delivery of any barrels, Binder and two Jefferson County sheriffs went to the Jelen yard to investigate. When Bandimere said that he did not know what the chemicals were, Binder called for a hazardous materials expert and restricted access to the area. The barrels were subsequently found to contain, among other things, acid and potassium cyanide that,

---

**1.** Michael Jelen died before the trial started. The trial court ruled that the terms "concentrate" and "F.O.B. Golden" as used in the contract were ambiguous, and allowed Bandimere to introduce parol evidence on the parties' understanding. That ruling was affirmed by the court of appeals, and is not before this court for review.

when combined, produce hydrocyanic acid, a deadly gas.

Both the trucks and barrels were impounded. Jelen refused to accept the barrels containing the chemicals or hazardous material, and the authorities determined they were Bandimere's responsibility. With the assistance of Arvada's hazardous material team, the barrels were stabilized and their contents cleaned-up. The chemicals were eventually sent to a mining company. Bandimere was cited with criminal charges for causing a hazardous waste incident, but those charges were subsequently dismissed after Bandimere agreed to pay all costs associated with the clean-up of the materials.

In August 1987, Bandimere filed suit against Jelen claiming it was Jelen's refusal to accept the barrels that caused Bandimere to be held responsible for the clean-up costs. Trial was to a jury, which returned a verdict in favor of Bandimere and awarded damages, including attorney fees spent by Bandimere to defend against the criminal charges.

Jelen appealed to the court of appeals, which affirmed the jury verdict and award with the exception of the attorney fees. The court held, *inter alia*, that "[i]n breach of contract cases, the breaching party is liable in damages for all natural and proximate consequences of the breach which could have been reasonably anticipated at the time of the execution of the contract ... includ[ing] those assessed here: the cost of clean-up and disposal...." The court found, "Bandimere's transportation of the chemicals was in direct response to Jelen's refusal to pick them up and his suggestion that Bandimere deliver them himself."

## II

The sales of goods in Colorado is controlled by Title 4, Article 2, C.R.S. (1973 & 1990 Supp.), which substantially adopts the Uniform Commercial Code (U.C.C.).

Although in contention at trial, we assume for the purposes of this review that there was a contract between the parties that included the exchange of the barrels of chemicals in issue, some other equipment and materials, and $3,500 for a compressor valued at $17,500. Under the contract, as originally written, Jelen was to retrieve the chemicals and all other equipment from Bandimere at Bandimere's place of business. Our assumption is based on the instructions to the jury requiring the jury to find that there was a contract, that Jelen agreed to purchase the chemicals, that Jelen authorized Bandimere to deliver the chemicals, and that Bandimere suffered damages as a result of Jelen's breach if Bandimere was to recover damages. The jury verdict for Bandimere would be inconsistent with any other findings of fact. *See Knapp v. Hurd*, 100 Colo. 537, 68 P.2d 557 (1937).

## III

Under the Uniform Commercial Code, consideration for goods may be payable in money, goods, realty, or otherwise. § 4–2–304, 2 C.R.S (1973). "If it is payable in whole or in part in goods, each party is a seller of the goods which he is to transfer." *Id.* In this case, Bandimere is a seller of the chemicals, and his rights under the U.C.C. are limited to those of a seller against a breaching buyer. Even if Jelen did breach the contract, Bandimere's remedies are limited to those provided by section 4–2–703. Once Jelen breached the contract by not accepting the goods, Bandimere could:

(a) Withhold delivery of such goods;

(b) Stop delivery by any bailee as hereafter provided (section 4–2–705);

(c) Proceed under section 4–2–704 respecting goods still unidentified to the contract;

(d) Resell and recover damages as hereafter provided (section 4–2–706);

(e) Recover damages for nonacceptance (section 4–2–708) or in a proper case the price (section 4–2–709);

(f) Cancel.

*Id.* Bandimere did not clearly invoke any of the above remedies, but instead based his claim directly on section 4–2–710. Regardless of whether Bandimere relied on

section 4–2–706 or 4–2–708, section 4–2–710 operates in the same manner:[2]

> Incidental damages to an aggrieved seller include any commercially reasonable charges, expenses, or commissions incurred in stopping delivery, in the transportation, care, and custody of goods *after* the buyer's breach, in connection with return or resale of the goods, or otherwise resulting from the breach.

*Id.* (emphasis added).

### A

■ The trial court allowed evidence of attorney fees paid by Bandimere to go before the jury. The court of appeals reversed, holding that attorney fees were not proper incidental damages. We agree.

Most commentators and courts find that section 4–2–710 does not include attorney fees as incidental damages. 1 White & Summers, *Uniform Commercial Code* 382 (3d ed. 1988 & 1990 Supp.); 4 Anderson, *Uniform Commercial Code* § 2–710–10 (3d ed. 1983 & 1989 Supp.); *Great Western Sugar Co. v. Mrs. Allison's Cookie Co.*, 563 F.Supp. 430 (E.D.Mo.1983), *aff'd on other grounds*, 749 F.2d 516 (8th Cir.1984); *Neri v. Retail Marine Corp.*, 30 N.Y.2d 393, 285 N.E.2d 311, 334 N.Y.S.2d 165 (1972); *Johnson Tire Serv., Inc. v. Thorn, Inc.*, 613 P.2d 521 (Utah 1980). We agree with this view and hold that absent other statutory or contractual provisions to the contrary, attorney fees are not incidental damages under section 4–2–710.[3]

### B

■ Bandimere argues there was a contractual relationship and that two breaches were committed by Jelen. The first breach, according to Bandimere, occurred when Jelen requested Bandimere to deliver the goods. The second breach occurred when Bandimere attempted to deliver the goods and Jelen rejected them. Bandimere concedes, however, that he agreed to deliver the chemicals after the telephone call from Jelen requesting that he do so. Such an agreement, even if not a valid contract modification, represents a waiver by Bandimere of the delivery terms. § 4–2–209(4), 2 C.R.S. (1973) ("Although an attempt at modification or rescission does not satisfy the requirements of subsection (2) or (3) of this section [that the statute of frauds must be satisfied], it can operate as a waiver."). A waiver can be shown by "unequivocal conduct or statements betraying an intent to relinquish known rights." *United States v. Santa Fe Eng'rs, Inc.*, 515 F.Supp. 512, 515 (D.Colo.1981); *see also Lease Fin., Inc. v. Burger*, 40 Colo.App. 107, 114, 575 P.2d 857, 862 (1977); *Farmers Elevator Co. v. Anderson*, 170 Mont. 175, 178–81, 552 P.2d 63, 65–66 (1976) (voluntary relinquishment of a known right, claim, or privilege).

■ After the delivery terms were waived by Bandimere, Jelen no longer had a legal duty to retrieve the chemicals from Bandimere's property.[4] The trial court and court of appeals concluded that a breach did occur when Jelen refused to accept the chemicals after Bandimere attempted delivery. Accordingly, the jury was instructed that it must find that Jelen breached the contract in order to find for Bandimere. We disagree.

At the time Jelen refused to accept the goods, there were no remaining legal duties under the contract. Bandimere was paid the consideration Jelen owed him

---

**2.** *See* 1 White & Summers, *Uniform Commercial Code* § 7–16 (3d ed. 1988 & 1990 Supp.); *Lee Oldsmobile, Inc. v. Kaiden,* 32 Md.App. 556, 363 A.2d 270 (1976). Section 4–2–709 is only available to the seller when the buyer fails to pay the price as it becomes due. Because Bandimere admits that Jelen paid the full price for the goods, Bandimere could not have invoked this remedy.

**3.** Attorney fees incurred in defending a criminal action may be recovered in at least one state if that criminal action was a natural and foreseeable consequence of a breach of contract, although that issue has not been resolved in Colorado. *See De La Hoya v. Slim's Gun Shop,* 80 Cal.App.3d Supp. 6, 146 Cal.Rptr. 68 (1978). Because of our disposition of this case, however, we need not reach that issue.

**4.** We do not resolve whether the oral agreement also served as a valid modification. At least one commentator would find that it did. *See* 1 White & Summers, *supra,* at 58–61.

when he received the compressor. Jelen, on the other hand, received the consideration owed him when Bandimere paid him the $3,500 and transferred title to the equipment and chemicals to Jelen. "A constructive delivery is effectuated when, without actual transfer of the goods or their symbol, the conduct of the parties is such as to be inconsistent with any supposition other than there has been a change in the nature of the holding." *Lakeview Gardens, Inc. v. State ex rel. Schneider,* 221 Kan. 211, 217, 557 P.2d 1286, 1290 (1976). "There may be a completed delivery although the goods remain in the possession of the seller if the seller's possession is as an agent *or at the request of the buyer* under an agreement to store or care for the property, and nothing further remains to be done by either party to complete the sale." *Id.* at 217, 557 P.2d at 1290–91 (emphasis added).

After Bandimere agreed to release Jelen from his obligation to deliver the goods, all of the contract terms had either been satisfied or waived. Even assuming that the terms of the contract were breached, Bandimere would still not be entitled to damages under the U.C.C.

C

The court of appeals allowed damages for clean-up costs incurred by Bandimere. Rather than look to the U.C.C., however, the court of appeals relied on a pre-code case, *Uinta Oil Refining Co. v. Ledford,* 125 Colo. 429, 244 P.2d 881 (1952), in which we stated that the breaching party is liable for all foreseeable damages that were the "natural and proximate consequence of a breach thereof." *Id.* at 434, 244 P.2d at 885. The seller's remedies are now controlled by the U.C.C., however, and Bandimere's damages in contract must flow, if at all, from the code. As we have previously stated, under the facts before us, Bandimere's recovery must be under section 4–2–710.

By holding that Bandimere could recover damages that were the consequence of Jelen's breach, the court of appeals blurred the distinction between U.C.C. seller's and buyer's remedies. Section 4–2–715 specifically allows buyers to recover consequential damages resulting from the seller's breach. § 4–2–715(2), 2 C.R.S. (1973). There is no corresponding provision in the code allowing the seller to recover consequential damages.[5] "Reading the explicit grant in 2–715 together with the restriction in 1–106, courts have concluded that the drafters did not intend to give the seller consequential damages. The courts seem also to have concluded that the words 'or otherwise resulting from the breach' in 2–710 itself do not authorize recovery of consequential damages." 1 White & Summers, *supra,* at 382. *See also Petroleo Brasileiro, S.A. Petrobras v. Ameropan Oil Corp.,* 372 F.Supp. 503 (E.D.N.Y.1974) [hereinafter *Petroleo* ].

In *Petroleo,* the district court stated:

While the distinction between the two is not an obvious one, the Code makes plain that incidental damages are normally incurred when a buyer (or seller) repudiates the contract or wrongfully rejects the goods, causing the other to incur such expenses as transporting, storing, or reselling the goods. On the other hand, consequential damages do not arise within the scope of the immediate buyer-seller transaction, but rather stem from losses incurred by the nonbreaching party in its dealings, often with third parties, which were a proximate result of the breach, and which were reasonably foreseeable by the breaching party at the time of the contracting.

*Id.* at 508. The expenses at issue in *Petroleo* were fines levied against the plaintiff-seller by the Brazilian government as a result of the defendant-buyer's failure to pay for oil he received from the seller. The court held that those penalties could not be

---

**5.** Section 4–1–106(1) declares:
The remedies provided by this title shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed, *but*

*neither consequential or special nor penal damages may be had except as specifically provided in this title or by any other rule of law.*
(Emphasis added.)

properly characterized as "incidental" damages under section 2–710. *Id.* at 509. Other courts agree with that formulation. *Bill's Coal Co. v. Board of Pub. Utils. of Springfield*, 887 F.2d 242 (10th Cir.1989) (incidental costs do not include those expended in preparation for litigation); *Stokes v. Roberts*, 289 Ark. 319, 711 S.W.2d 757 (1986) (had sellers never entered into the contract, they still would have been obligated); *S.C. Gray, Inc. v. Ford Motor Co.*, 92 Mich.App. 789, 286 N.W.2d 34 (1979) (interest on loans taken out to maintain seller's business until buyer paid him are not incidental damages); *Sprague v. Sumitomo Forestry Co.*, 104 Wash.2d 751, 709 P.2d 1200 (1985) (that loss was proximately caused by buyer's breach is irrelevant).

Bandimere's damages were not incidental to Jelen's refusal to accept delivery of the chemicals, but instead were incurred as a result of improper storage, handling, and transportation of hazardous materials and his subsequent dealings with a third party: the State of Colorado. Just as the fines levied against the seller in *Petroleo* could not be fairly characterized as incidental damages, the costs Bandimere agreed to pay the state for reimbursement cannot be recovered as incidental costs under section 4–2–710. That those costs may have been levied against Bandimere as a proximate consequence of Jelen's failure to claim ownership of the chemicals is not relevant since the focus of section 4–2–710 is upon damages arising within the scope of the immediate contract. *See, e.g., Sprague,* 104 Wash.2d at 757, 709 P.2d at 1206.

In addition, the damages did not arise as a result of the breach, as they must to be characterized as incidental under section 4–2–710. *See* 1 White & Summers, *supra,* at 381; *Serna, Inc. v. Harman,* 742 F.2d 186 (5th Cir.1984). The invoice or contract drawn up by Jelen and Bandimere contained no delivery terms, except an ambiguous term "F.O.B. Golden," which might have applied to the chemicals or instead to Bandimere's compressor. Bandimere agreed to deliver the chemicals after being requested to do so by Jelen, but Jelen had no control over how Bandimere chose to make that delivery. It was Bandimere's decision to load open, corroded, and leaking barrels of hazardous material on two flatbed trucks and drive them to Jelen's yard, and the damages Bandimere incurred were in consequence of unreasonably transporting the materials. *See N.L. Indus., Inc. v. Department of Transp.,* 901 F.2d 141, 144 (D.C.Cir.1990). Jelen was under no obligation to accept delivery of the barrels under the circumstances.

## IV

We conclude that the court of appeals correctly reversed the jury award of attorney fees against Jelen in favor of Bandimere. We hold, however, that the court of appeals erred in upholding the remainder of the jury award to Bandimere.

Accordingly, we reverse the award of consequential damages to Bandimere and return this case to the court of appeals with directions to remand to the trial court to enter judgment for the defendant, Jelen and Son, Inc.

LOHR, J., does not participate.