**ROCKY MOUNTAIN RHINO LINING,
INC., Plaintiff–Appellee and
Cross–Appellant,**

v.

**RHINO LININGS USA, INC., Defendant–
Appellant and Cross–Appellee.**

No. 00CA0242.

Colorado Court of Appeals,
Div. IV.

May 24, 2001.

Certiorari Granted Jan. 14, 2002.

Robinson Waters & O'Dorisio, P.C., Harold R. Bruno, III; Krys Boyle Freeman & Sawyer, P.C., Thomas Boyle, Denver, CO, for Plaintiff–Appellee and Cross–Appellant.

Kennedy & Christopher, P.C., John R. Mann, Ronald H. Nemirow, Denver, CO; Vinton Nissler Allen & Vellone, P.C., Patrick J. Russell, Denver, CO, for Defendant–Appellant and Cross–Appellee.

Opinion by Judge DAVIDSON.

Defendant, Rhino Linings USA, Inc., appeals from a judgment entered by the trial court in favor of plaintiff, Rocky Mountain Rhino Lining, Inc. Plaintiff cross-appeals from the trial court's assessment of damages. We affirm and remand for an award of fees and costs.

Defendant produces and distributes a polyurethane product known as "Rhino Linings," which typically is used to coat truck beds and other industrial surfaces. Defendant distributes this product through a national network of dealers, advertising such dealerships in magazines, through direct mail, and at trade shows.

Plaintiff entered into a dealer contract with defendant in October 1992. Under the terms of this contract, plaintiff had the right to be the sole distributor of Rhino Linings in Adams County.

Frederick Schaefer entered into a dealer contract with defendant in 1995. According to the contract, Schaefer's base of operations was Clear Creek County. However, the trial court found that the arrangement was intended to allow Schaefer to operate a mobile unit out of his home in Adams County. Schaefer received materials at his home in Brighton, and later in Broomfield, and performed contracts in and around Adams County, but neither received materials nor performed contracts in Clear Creek County. Schaefer ceased doing business as a Rhino Linings dealer in May 1996.

Plaintiff initially sued for breach of contract, later amending its complaint to include claims under the Colorado Consumer Protection Act (CCPA).

After a bench trial, the court concluded that, by selling its product within Adams County to Schaefer, defendant had breached its contract with plaintiff by violating the exclusive territory agreement, and also had violated the provisions of the CCPA by engaging in unfair trade practices. The court calculated plaintiff's net lost profits to be $22,373.40, and, based on the CCPA violation, added interest and trebled the damage award to $83,505.00. The court also awarded attorney fees and costs to plaintiff.

On appeal, defendant challenges the judgment entered in favor of plaintiff on its CCPA claim and the trial court's calculation of plaintiff's net lost profits. Plaintiff cross-appeals a portion of the damages award.

## I.

The CCPA provides a private cause of action for deceptive trade practices that affect the public. Section 6–1–105, C.R.S.2000. Damages under the CCPA are available to any person in a civil action for any claim against any person who has engaged in or caused another to engage in any deceptive trade practice. Section 6–1–113(1), C.R.S. 2000.

At the close of plaintiff's evidence, pursuant to C.R.C.P. 41(b)(1), defendant moved to dismiss, arguing that under the facts and law plaintiff had failed to show any right to relief under the CCPA. Defendant contends that the trial court erred in denying that motion. We disagree.

## A.

Initially, we address defendant's contention that the trial court misstated the proper standard in denying its C.R.C.P. 41(b)(1) motion.

■ We agree with defendant that, contrary to the explanation given by the trial court, in a C.R.C.P 41(b)(1) motion, a plaintiff need not necessarily make out a prima facie case, see *Public Service Co. v. Board of Water Works*, 831 P.2d 470 (Colo.1992), nor must the court view the evidence in the light most favorable to the plaintiff. *Rubens v. Pember*, 170 Colo. 182, 460 P.2d 803 (1969). However, because we conclude below that plaintiff established a proper claim under the CCPA, the error was harmless.

## B.

■ To establish a private claim under the CCPA, the plaintiff must show that: (1) the defendant engaged in an unfair or deceptive trade practice as set forth in § 6–1–105(1), C.R.S.2000; (2) the challenged practice occurred in the course of the defendant's business, vocation, or occupation; (3) the challenged practice significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) the plaintiff suffered injury in fact to a legally protected interest; and (5) the chal-

lenged practice caused the plaintiff's injury. *Hall v. Walter,* 969 P.2d 224 (Colo.1998).

Here, the trial court concluded that defendant had violated the CCPA by advertising and selling dealerships that promised territorial exclusivity as part of a dealer's contract, with no intention to honor that promise.

The trial court based its determination on evidence that plaintiff had been promised exclusive territory, that Schaefer was assured by defendant that he could operate his dealership from Adams County even though plaintiff had already been promised that same territory, and that a dealer in New Mexico had been permitted to operate in another dealer's exclusive territory. The trial court inferred, based upon the experiences of these dealers, that these situations did not occur simply by coincidence.

On appeal, defendant asserts that the trial court was wrong because, first, defendant's conduct was not a "deceptive trade practice," and second, even if it were, such practice had no significant impact on the consuming public. We disagree.

### 1.

First, defendant argues that its representation of territorial exclusivity to dealers did not constitute a "deceptive trade practice" because it was not a misrepresentation of the characteristics or uses of, inter alia, any "services or property." Because we conclude that a distributorship is a type of property, we disagree.

The CCPA, § 6–1–105, provides:
(1) A person engages in a deceptive trade practice when, in the course of such person's business, vocation, or occupation, such person ...
(e) Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith. . . .

The terms in § 6–1–105 must be construed in light of the CCPA's broad legislative purpose. *See Nienke v. Naiman Group, Ltd.,* 857 P.2d 446 (Colo.App.1992).

The CCPA defines property as "real or personal property, ... intangible property, or services." Section 6–1–102(8), C.R.S.2000. Elsewhere, property is defined as "any external thing over which the rights of possession, use, and enjoyment are exercised." *Black's Law Dictionary* 1232 (7th ed.1999). A distributorship is a franchise held by a person or company who sells merchandise, usually in a specific area, to individual customers. *Black's Law Dictionary, supra,* at 488. A franchise, in the commercial sense, is the sole right granted by the owner of a trademark or tradename to engage in business or to sell goods or services in a certain area. *Black's Law Dictionary, supra* at 668.

Hence, because a distributorship is a franchise over which a dealer exercises a right of possession, use, and enjoyment, we conclude that a distributorship is "property" as referenced in the CCPA. *See Hamilton Co. v. Massachusetts,* 73 U.S. (6 Wall.) 632, 18 L.Ed. 904 (1868) (corporate franchise is a legal estate); *Wheeler v. Box,* 671 S.W.2d 75 (Tex.App.1984) (a franchise encompasses both tangible property and services for use in the function of the business).

### 2.

A claim for relief under the CCPA requires a misrepresentation that affects the consuming public. *Martinez v. Lewis,* 969 P.2d 213 (Colo.1998). Defendant contends that its practices had no such public impact.

### a.

Defendant asserts that, as a matter of law, distributors are not consumers, and that the purchase of a franchise is, therefore, a purely private contractual transaction. We disagree.

Under the CCPA, damages are available to "any person" injured by a deceptive trade practice under the CCPA. Section § 6–1–113(1); *see also* § 6–1–105 (listing deceptive trade practices). Although the term "any person" is broad, the CCPA will not remedy private injuries. *See Martinez v. Lewis, supra.*

The CCPA does not define "consumer" or "consuming public," nor does Colorado law address whether a franchisee is a consumer under the CCPA. However, other jurisdictions have recognized a franchisee to be a "consumer" under their respective consumer protection acts. *See Bailey Employment System, Inc. v. Hahn,* 545 F.Supp. 62 (D.Conn.1982), *aff'd,* 723 F.2d 895 (2d Cir. 1983) (franchisee is a "consumer" of corporate franchise services); *Martin v. Bullinger,* 43 Ohio App.3d 136, 137, 539 N.E.2d 681, 682 (1988) (under the Ohio statute, "consumer transaction" includes the "sale, lease, assignment ... or other transfer of an item of goods, a service, franchise ..."); *Wheeler v. Box, supra* (franchisees were consumers even though the business entity is intangible).

Similarly, here, distributors purchased franchises from a defendant whose business included the sale of franchises to distributors throughout the country. Thus, plaintiff and other franchisees were consumers of a corporate franchise in the same respect that an ordinary individual consumer is a purchaser of a more conventional commodity.

b.

■ However, defendant argues that, even if plaintiff is a "consumer" under the circumstances here, the trial court erred in finding that defendant's deceptive practices had a significant public impact. Again, we disagree.

■ Three factors must be considered in assessing the public impact of an allegedly deceptive trade practice: the number of consumers directly affected by the challenged practice; the relative sophistication and bargaining power of the consumers affected by the challenged practice; and evidence that the challenged practice previously impacted other consumers or has significant potential to do so in the future. *Martinez v. Lewis, supra* (deceptive trade practice involving only a single consumer suggests only a private wrong).

Testimony at trial showed that, at the very least, three consumers were affected by defendant's misrepresentations: Schaefer, plaintiff, and one other dealer. Ordinarily, the sophistication and bargaining power of a relatively large company with over 500 franchises nationwide is greater than the bargaining power of potential or actual individual franchise purchasers. Evidence presented by plaintiff showed that defendant's practices had affected distributors who contracted for an exclusive territory, but did not receive it. There also is record support for the trial court's finding that consumers were injured in the past and that, were defendant allowed to continue with its current business practices, the challenged practices would impact prospective dealers in the future.

We simply do not agree with defendant's argument that the misrepresentation to Schaefer that it was permissible to operate in plaintiff's territory and the misrepresentation to plaintiff that it had an exclusive territory, were different acts, and, therefore, only a single consumer could be impacted by each misrepresentation.

■ To the contrary, a misrepresentation under the CCPA need not be identical as to each injured party, but may arise from a common scheme of misrepresentation. *See Dix v. American Bankers Life Assurance Co.,* 429 Mich. 410, 418, 415 N.W.2d 206, 210 (1987) (in determining whether to certify a class, the court noted that the "alleged misrepresentations may differ somewhat ... [but] are all part of a common scheme, they all stem from the same pattern of misrepresentation, and they all are actionable under the Consumer Protection Act."); *see also McRae v. Bolstad,* 101 Wash.2d 161, 676 P.2d 496 (1984); *Polonetsky v. Better Homes Depot, Inc.,* 185 Misc.2d 282, 712 N.Y.S.2d 801 (Sup.Ct.2000).

By its nature, any misrepresentation of an exclusivity provision, as here, necessarily impacts at least two parties: the party originally promised the exclusive territory and the party or parties violating that exclusive territory. Here, although defendant only actively misrepresented the nature of the exclusivity provision of the dealership to Schaefer, that particular misrepresentation, by necessity, also affected plaintiff, to whom the exclusive territory had been falsely promised. The misrepresentation made to Schaefer and the

misrepresentation made to plaintiff, simply stated, were just two sides of the same coin.

## II.

Next, defendant argues that the trial court's method of calculating lost profits was erroneous. Plaintiff, in its cross-appeal, argues specifically that the trial court erred by deducting a percentage for operating expenses from the lost profits calculation. We disagree.

The trial court has the sole prerogative of fixing damages in a contract dispute, and we review such determinations only for clear error. *Interbank Investments, L.L.C. v. Vail Valley Consolidated Water District,* 12 P.3d 1224 (Colo.App.2000). The calculation of damages need only be reasonable. *See Tull v. Gundersons, Inc.,* 709 P.2d 940 (Colo.1985). When evidence establishes both higher and lower amounts than the trial court's award, the trial court's finding of damages is presumed to be correct. *McDonald's Corp. v. Brentwood Center,* 942 P.2d 1308 (Colo.App.1997).

Under a breach of an exclusive distributorship agreement, the proper measure of damages is the amount of profits, commissions, or discounts of which the agent is deprived, excluding profits that are too remote or merely speculative. Similarly, operating expenses are not included among recoverable damages, but must be deducted from the profit margin. *See Uinta Oil Refining Co. v. Ledford,* 125 Colo. 429, 244 P.2d 881 (1952).

Here, to calculate gross damages, the trial court took the value of the total amount of product purchased by Schaefer, regardless of the location to which it was shipped or the county in which it was eventually used, and multiplied that amount by 4/3, which was plaintiff's usual formula for estimating and pricing bids. This yielded a gross figure of $37,289.33, which the court then multiplied by a factor of 0.6 to account for operating expenses, to yield a net figure of $22,373.40. Adding interest, and then calculating treble damages pursuant to the CCPA.

Neither party contends that the lost profits was the wrong measure of damages, but both parties urge different calculations. At the lower end, defendant suggests a formula based on Schaefer's actual net profits on his sale of Rhino product within Adams County alone, resulting in a figure of $1,047.50 before trebling. Defendant reasons that plaintiff was not entitled to any more than Schaefer actually netted while selling Rhino products within Adams County. At the upper end, plaintiff suggests a formula based on Schaefer's gross profits, resulting in a figure of $37,289.33 before trebling, along with attorney fees, costs, and interest. Plaintiff reasons that it was entitled to recover for the value of all projects performed by Schaefer, whether within or outside Adams County, and should not be limited by Schaefer's inefficiencies and low net profits.

However, the trial court's calculation of damages is supported by the record. The court's formula for calculating damages, which was based on the same formula that defendant taught plaintiff to use, and which plaintiff actually used when bidding jobs, was correctly applied to arrive at a gross figure for damages. Parsing out damages based on where Schaefer received the shipments or eventually used the product, as defendant urges, ignores the premise that the basis of plaintiff's entitlement to damages was the underlying breach of contract by defendant. Defendant's act of allowing Schaefer to operate a dealership in plaintiff's exclusive territory, rather than any specific acts by Schaefer, formed the basis for awarding plaintiff damages in the amount of Schaefer's total gross.

Additionally, although plaintiff disputes the court's application of any multiplier to adjust for operating expenses, neither party disputes the court's choice of 0.6 as that particular multiplier. The formula requires an adjustment for operating expenses, and the resulting damages award lies between defendant's and plaintiff's suggested figures. Thus, based on the record here, we see no reason to disturb the court's award.

## III.

Under the CCPA, a prevailing party is entitled to "the costs of the action together

with reasonable attorney fees as determined by the court." Section 6–1–113(2)(b), C.R.S. 2000. Plaintiff asserts, and we agree, that as the prevailing party it should be awarded attorney fees and costs incurred in this appeal.

However, although we decide that plaintiff is so entitled, the trial court as factfinder is in a better position to assess the amount. *See, e.g., Giampapa v. American Family Mutual Insurance Co.,* 12 P.3d 839 (Colo. App.2000) (*cert. granted* Nov. 6, 2000).

Accordingly, the judgment is affirmed, and the cause is remanded to the trial court for an award of reasonable attorney fees and costs incurred by plaintiff in this appeal.

Judge RULAND and Judge KAPELKE concur.

