Dolly BARCIAK, Plaintiff,

v.

UNITED OF OMAHA LIFE
INSURANCE COMPANY,
Defendant.

No. 90–C–1559.

United States District Court,
D. Colorado.

Nov. 6, 1991.

Karen Zulauf, Boulder, Colo., for plaintiff.

Arthur Downey, Denver, Colo., for defendant.

## MEMORANDUM OPINION
## AND ORDER

CARRIGAN, District Judge.

Plaintiff Dolly Barciak, a Colorado resident, commenced this action against United of Omaha Life Insurance Company (United), a Nebraska corporation, in the state district court for Boulder County, Colorado. Plaintiff asserts claims for breach of contract (first claim), breach of covenant of good faith and fair dealing (second claim) and emotional distress (third claim). Plaintiff also seeks punitive damages and attorneys' fees. Pursuant to 28 U.S.C. § 1441, the defendant removed the action to this court on September 4, 1990.

Plaintiff has filed two motions for summary judgment. In her first motion, she seeks partial summary judgment on the breach of contract claim. Defendant has responded by opposing the motion, and by cross moving for summary judgment on each of the plaintiff's claims.

In her second motion, the plaintiff seeks partial summary judgment as to the defendant's ninth through fifteenth affirmative defenses. Defendant has responded by confessing the motion as to the tenth, thirteenth and fifteenth defenses, and by cross moving for summary judgment as to its ninth, eleventh, twelfth and fourteenth affirmative defenses.

The parties have fully briefed the issues and oral argument would not materially facilitate the decision process. Jurisdiction is founded on 28 U.S.C. § 1332.

### I. Facts.

During April 1989, Rudy Barciak (Barciak), now deceased, received four medical examinations from Dr. Allen Snyder, an internist. Barciak sought medical attention for shortness of breath and difficulty in sleeping. Dr. Snyder performed a number of tests, including a chest X-ray and an electrocardiogram (EKG). Dr. Snyder also prescribed medication for Barciak and referred him to Dr. Paul Turvey, a cardiologist. Barciak scheduled an appointment with Dr. Turvey for May 13, 1989.

On May 1, 1989, United insurance agent Richard Winter assisted Barciak in completing a United life insurance application. Barciak designated his wife, the plaintiff, as beneficiary. The application form that

Barciak completed specifically requested information regarding medical treatment he had received in the past five years, including medical care for chest pain and medical tests such as EKGs and X-rays. The completed application neither mentioned Barciak's April 1989 examinations by Dr. Snyder nor indicated that he had received any of the above-mentioned medical tests, health care or referral to a cardiologist.

Barciak signed the application on May 1, 1989, four days after his most recent visit with Dr. Snyder. Barciak's signature verified that his answers to the application's questions were "true and complete to the best of my knowledge and belief...." (Plaintiff's Ex. 3, p. 2).

On May 15, 1989, a United representative conducted a follow-up telephone interview with Barciak regarding his life insurance application. (Plaintiff's Ex. 7). At that time, Barciak stated that he had seen Dr. Snyder, a general practitioner, for a "headache" and that a battery of tests had been performed, including blood, urine, chest x-ray, EKG, heart lungs, eyes, ears, nose, throat and blood pressure.[1] (Plaintiff's Ex. 7). He further stated that Dr. Snyder's diagnosis was unknown and that no medication or treatment had been prescribed. *Id.* When asked directly if he had consulted with any other physician, Barciak answered "no." *Id.*

During that telephone conversation, Barciak did not disclose that he had seen Dr. Snyder four times during April 1989; that Dr. Snyder had repeatedly warned him about a possible heart problem; that Dr. Snyder had prescribed medication for a heart condition as well as tranquilizers for stress related to Barciak's having just quit smoking; that he had been referred to and examined by Dr. Turvey two days prior to the May 15 telephone interview; and that Dr. Turvey had recommended additional treatment and follow-up for a possible heart condition. (Defendant's Ex. D and I).

United approved Barciak's life insurance application on May 25, 1989. On July 9, 1989, Barciak died of a heart attack. July 25, 1989, the plaintiff submitted a claim to United for payment of the life insurance policy proceeds.

United thereafter investigated the plaintiff's claim for benefits. In a letter dated November 2, 1989, United wrote to the plaintiff that had it been aware of Barciak's condition and treatment at the time of his application, it would not have issued the policy. United further stated that because Barciak had failed to disclose material information on his application, it considered the policy void from the date of issue. United therefore denied the plaintiff's claim for policy benefits. (Plaintiff's Ex. 6, p. 1).

## II. Discussion.

In her first motion, the plaintiff seeks partial summary judgment on the breach of contract claim. Plaintiff asserts that because Barciak disclosed to United, in his follow-up telephone interview, "that he had seen Snyder during April of 1989," (plaintiff's brief, p. 3), the ground on which United premised its denial of insurance benefits was without merit. She argues that United had constructive notice of Barciak's condition and therefore had a duty independently to investigate the reason for Barciak's visit to Dr. Snyder. United's failure to conduct that investigation, she contends, precludes it from denying insurance benefits on the ground of misrepresentation.

Plaintiff has responded to the defendant's cross motion for summary judgment by arguing that Barciak's lack of English language competency prevented him from understanding Dr. Snyder's diagnosis of a possible heart condition and from relating that condition to United. Because Barciak did not fully comprehend that diagnosis, she argues, he could not knowingly have made false statements to United regarding his heart condition. (Plaintiff's response, p. 8.) Plaintiff therefore contends that summary judgment is improper because there is a genuine fact issue whether Barciak "knowingly" concealed material facts from United.

[1] I note that Snyder is an internist, not a general practitioner.

Summary judgment is proper if the pleadings, depositions and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Summary judgment also is appropriate where the court can conclude, as a matter of law, that based on the record taken as a whole, no reasonable juror could find for the non-moving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In *Murray v. Montgomery Ward Life Ins. Co.,* 196 Colo. 225, 584 P.2d 78 (1978), the Colorado Supreme Court set forth five elements that an insurance company must prove to justify recission of a life insurance policy on the basis of misrepresentation in the application. Those elements are:

"(1) the applicant made a false statement of fact or concealed a fact in his application for insurance; (2) the applicant knowingly made the false statement or knowingly concealed the fact; (3) the false statement of fact or the concealed fact materially affected either the acceptance of the risk or the hazard assumed by the insurer; (4) the insurer was ignorant of the false statement of fact or concealment of fact and is *not chargeable with knowledge of the fact;* (5) the insurer relied, to its detriment, on the false statement of fact or concealment of fact in issuing the policy." *Id.* 584 P.2d at 80 (emphasis added); *see also Hollinger v. Mutual Benefit Life Ins. Co.,* 192 Colo. 377, 560 P.2d 824 (1977).

In *Murray,* the Colorado Supreme Court upheld a jury verdict and judgment in favor of an insurance company. There, the decedent Jane Murray fell from a horse, sustaining serious skull and brain injuries. She initially sought and obtained a hospital income insurance policy from the defendant insurance company, a policy that paid Murray's claims for hospital expenses. *Murray,* 584 P.2d at 79.

Murray subsequently applied for a life insurance policy with the defendant. In response to questions on the application concerning her past and present physical condition, Murray stated that she had had X-rays due to a head injury from a fall and that as a result of medical treatment, she had "recovered." *Murray,* 584 P.2d at 80. The life insurance was issued to her shortly thereafter.

Within a month after the life policy's issuance, Murray was rehospitalized for surgery related to her accident injuries. She died two months later as a result of complications from the surgery. The life insurance company refused to pay Murray's husband's claim under its policy, asserting that the decedent had misrepresented the state of her health on the application. *Id.* 584 P.2d at 80.

In *Murray,* the plaintiff claimed that because the insurance company had previously paid the decedent's hospital claims related to her earlier accident, it had "constructive notice" of her condition and thus waived any right to deny benefits on the grounds of fraud. *Id.* 584 P.2d at 80. The Colorado Supreme Court disagreed, however, holding that the decedent had an obligation to answer questions on the life insurance form truthfully and in good faith, and that Murray's failure to inform the insurance company of her serious medical problem precluded payment under the policy. *Id.* 584 P.2d at 80.

The Tenth Circuit also has considered the issue whether an insured's misrepresentations are sufficient grounds for denying insurance benefits. In *Major Oil Corp. v. Equitable Life Assur. Soc. of U.S.,* 457 F.2d 596, 602 (10th Cir.1972), the court stated the general rule that an intentional misrepresentation of a material fact by an applicant, relied on by the insurer, permits the latter to void the policy. The court, however, recognized an exception to that rule where an insurer has:

"actual knowledge of the true facts, or of the falsity of the statements, or at least has *sufficient indications* that would put a prudent [person] on notice and would have caused [that person] to start an inquiry which, if carried out with

reasonable thoroughness, would reveal the truth." *Id.* at 602 (emphasis added).

Plaintiff concedes that Barciak failed to disclose pertinent information regarding the state of his health. She asserts, however, that because United knew of Barciak's consultation with Dr. Snyder in April 1989, it should have investigated the nature of that consultation. Plaintiff further argues that Barciak's failure to disclose pertinent information regarding his diagnosis resulted from his unfamiliarity with English, rather than from an intent to conceal material facts from United.[2] The issues for decision, therefore, are: (1) whether United had sufficient indications regarding Barciak's condition that it should have conducted an independent investigation into the state of his health; and (2) whether Barciak knowingly concealed material facts from United during the insurance application process.

It is not disputed that Barciak made several false or misleading statements and failed to disclose vital information to United. In his application for life insurance, Barciak was asked whether "during the last five years have you or any person you wish to insure ... received medical care for any illness or injury or been examined by a doctor ... had an EKG, X-ray or other medical test ... received medical care for or had chest pain, heart attack, heart murmur or other heart disease?" To those questions, Barciak answered "No." (Plaintiff's Ex. 3, p. 2). Barciak's misrepresentation of recent medical history in his application, if made knowingly, would be a basis for United's rescission of the insurance contract. *See, e.g., Spencer v. Kemper Investors Life Ins. Co.,* 764 P.2d 408, 412 (Colo.App.1988).

■ The evidence is inconclusive whether Barciak directly answered the questions on the life insurance application himself or whether United agent Winter simply transferred the answers from Barciak's already completed health insurance application submitted two months earlier. (*See* Plaintiff's response, Ex. 4, p. 153–156). Even if Winter completed the application, however, the law charges Barciak with constructive knowledge of the contents of the application he signed. *Golden Rule Ins. Co. v. Lease,* 755 F.Supp. 948, 952 (D.Colo.1991).

■ Moreover, by signing the application, Barciak represented that his answers were true and complete to the best of his knowledge and belief. (Plaintiff's Ex. 3, p. 2). The law is clear that one who signs a contract is presumed to have read and understood each of its terms. *Master Palletizer Systems, Inc. v. T.S. Ragsdale Co.,* 725 F.Supp. 1525 (D.Colo.1989); *Clayton Brokerage Co. of St. Louis, Inc. v. Stansfield,* 582 F.Supp. 837 (D.Colo.1984); *Rasmussen v. Freehling,* 159 Colo. 414, 412 P.2d 217 (1966).

■ Arguably, Barciak could have cured the application's false statements and omissions in his subsequent telephone interview with United. It is uncontroverted, however, that Barciak during that phone call falsely stated that his visit (singular) to Dr. Snyder had been for treatment of a headache and that no medication had been prescribed. Plaintiff's own evidence demonstrates that Barciak told his wife and son that he needed medical attention for shortness of breath and explained to his aunt, after his initial visit to Dr. Snyder, that he had been given pills to treat a "lung" condition. (Plaintiff's Ex. 9, Stephanie Matecha dep. p. 40–41). It is further uncontroverted that Barciak failed to disclose other significant, recent medical treatment. (*See* p. 841, *supra*).

■ Taking the evidence in the light most favorable to the plaintiff, as I must, it is clear that even if Barciak did not understand Dr. Snyder's diagnosis, he did knowingly conceal material facts from United by misstating the nature of his consultation with Dr. Snyder, by failing to disclose that Dr. Snyder had placed him on medication,

---

**2.** It is settled Colorado law that an insurance policy can be avoided without establishing the separate element of "intent to deceive." *See, e.g., Hollinger,* 560 P.2d at 827. I construe the plaintiff's argument as asserting that Barciak did not *knowingly* make a false statement material to the insurer's assumption of risk. *See id.*

and by failing to inform United that he had seen Dr. Turvey on May 13, 1989, for additional diagnosis or treatment of his heart condition.

The only evidence that arguably *may* have put United on notice that Barciak's medical condition was significant was the fact that Barciak had undergone a chest X-ray and EKG. In the telephone conversation with the United representative, however, Barciak asserted that Dr. Snyder was a general practitioner, rather than a specialist in internal medicine. He further stated that he had undergone a battery of medical tests suggestive of a general physical examination. (See *supra*, p. 841, n. 1.) Barciak's misleading statements and failure to disclose the true nature of his recent medical examinations and prescribed treatment thus establish grounds for United's recission of the insurance policy. *Murray v. Montgomery Ward Life Ins. Co.*, 196 Colo. 225, 584 P.2d 78 (1978).

For the above reasons, I find and conclude that Barciak's statement that he had visited a general practitioner for treatment of a headache was insufficient to cause a prudent person to investigate Barciak's medical condition. *See Major Oil Corp. v. Equitable Life Assur. Soc. of U.S.*, 457 F.2d 596 (10th Cir.1972); *Murray v. Montgomery Ward Life Ins. Co.*, 196 Colo. 225, 584 P.2d 78 (1978). I further conclude that Barciak's alleged lack of English language proficiency does not vitiate his knowing concealment or misrepresentation of material facts.

Rather the uncontroverted facts establish that United relied to its detriment on Barciak's false statements and material omissions when issuing the policy at issue. Those false statements and omissions necessarily affected United's acceptance of the risk it assumed. Accordingly, the defendant's cross motion for summary judgment on the plaintiff's complaint and action must be granted. *See, e.g., Murray*, 584 P.2d at 80.

Plaintiff's second claim, asserting a breach of the covenant of good faith and fair dealing, is contingent on a finding that United breached its contract by failing to pay contract benefits due. Because I have concluded that United did not breach its contract, the second claim fails as a matter of law. Plaintiff's third claim asserting emotional distress as the result of the defendant's alleged breach of its duty of good faith and fair dealing likewise fails for the same reason.

Accordingly, IT IS ORDERED that:

(1) the defendant's cross motion for summary judgment on the plaintiff's claim and action is granted;

(2) the plaintiff's complaint and action are dismissed with prejudice;

(3) the plaintiff's motion for partial summary judgment on her breach of contract claim is denied;

(4) the plaintiff's motion for partial summary judgment on the defendant's affirmative defenses is denied as moot; and

(5) the defendant's cross motion for partial summary judgment on their ninth, eleventh, twelfth, and fourteenth affirmative defenses is denied as moot; and

(6) each party shall bear her or its own costs.