**Carol COOK and Farmers State Bank, as personal representative of the Estate of Douglas E. Cook, deceased, Plaintiffs,**

v.

**JACKSON NATIONAL LIFE INSURANCE COMPANY, Defendant.**

**Civ. A. No. 93–K–739.**

United States District Court, D. Colorado.

March 2, 1994.

Donald F. McClary, Fort Morgan, CO, Stephen Munsinger, Denver, CO, for plaintiffs.

John W. Cook, Colorado Springs, CO, for defendant.

### MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Plaintiff Carol Cook ("Mrs. Cook") is the mother of the decedent, Douglas E. Cook ("Cook"), and was the contingent beneficiary under a life insurance policy issued by Defendant Jackson National Life Insurance Company ("Jackson") on Cook's life. Farmers

State Bank ("the Bank") is the personal representative of Cook's estate, and it claims an interest in the proceeding. Mrs. Cook and the Bank commenced this action in state court against Jackson, asserting a claim for the $300,000 face value of Cook's life insurance policy plus damages for bad faith breach of an insurance contract, consequential damages and punitive damages. Jackson removed the action to this court on diversity grounds.

Plaintiffs move to strike or, in the alternative, for summary judgment on Jackson's second and third affirmative defenses.[1] Jackson moves for summary judgment as to all claims filed by Plaintiffs. I grant Plaintiffs' motion and deny that of Jackson.

## I. *Factual Background*

On June 19, 1990, Cook met with an independent insurance agent and completed an application to Jackson for a ten-year renewable term life insurance policy in the face amount of $300,000. The application contained a lengthy medical questionnaire. Cook responded "yes" to only one question regarding prior medical treatment within the last five years, noting that he had broken his hand. Cook answered "no" to questions concerning whether he had been a patient in a hospital, clinic or medical facility, been advised to limit or cease the use of alcoholic beverages, been counseled for alcohol or drug problems, or attended or joined any organization for alcohol or drug related problems.

Under the section relating to existing insurance, the application asked whether in the past three years Cook's driver's license had been suspended or revoked or whether he had been charged with more than two violations. Cook answered "yes" and provided his driver's license number. After the application was submitted to Jackson's underwriting department, Jackson requested and obtained a copy of Cook's driving record. It disclosed that he was arrested for driving under the influence of alcohol ("DUI") in 1986 and was convicted of that offense in 1987. As a result of this information, Jackson asked Cook to complete an alcohol use questionnaire, in which he was asked additional questions about alcohol treatment. Cook again denied receiving any treatment.[2] Based on the information acquired, Jackson's underwriter remarked in a report: "3/87—DUI seem [sic.] to be isolated incident [with] some past speeding violation [sic.]" (Def.'s Mot. Summ. J., Ex. D.) Jackson issued the policy on August 2, 1990.

On September 4, 1990, Cook changed the beneficiary designation in the policy to provide that Farm Credit Bank of Wichita was to be the primary beneficiary and that Mrs. Cook was to be the contingent beneficiary. Farm Credit Bank of Wichita later disclaimed any interest in the proceeds of the policy, and now Mrs. Cook is the sole beneficiary.

On June 6, 1992, Cook was killed in a single-car accident outside Fort Morgan, Colorado. Cook was a passenger and had a blood alcohol content of 0.198. Because Cook died within two years from the date of the issuance of the policy, Jackson conducted a routine review and obtained Cook's medical records and other documents, including records from Centennial Mental Health Center. These records, coupled with other information, reflect that Cook had, upon court order following his 1987 DUI conviction, entered an alcohol treatment program at Centennial. They also reflect that as part of his DUI sentence, he attended two Alcoholics Anonymous ("AA") meetings per month for six months. The records show that he had another DUI arrest on January 1, 1985 with a

---

1. Jackson voluntarily withdrew its third affirmative defense in its answer brief to Plaintiffs' motion. Therefore, I consider the motion only insofar as it relates to Jackson's second affirmative defense.

2. The alcohol use questionnaire was not attached to the policy. The policy provides that "no statement will void this Policy or be used as a defense to a claim unless it is contained in such written application." (Pls.' Compl., Ex. A. at 3.). Jack-

son acknowledges that it cannot use, as a defense to Plaintiffs' claim for the proceeds of the policy, any misrepresentations made in the alcohol use questionnaire. The questionnaire is relevant, however, to the issue of whether Jackson relied on material misrepresentations in the application in its decision to issue the policy or whether that decision was as a result of its own independent investigation.

blood alcohol content of 0.0128, but was not convicted. In·addition, the Centennial records reflect that, shortly after he completed his 1987 DUI treatment program, he received counselling. The counselling was ostensibly for his marital problems, but 'focussed on his drinking problem.

## II. *Summary Judgment Standards*

■■ I treat plaintiffs' motion as one for summary judgment and apply summary judgment standards to both Plaintiffs' and Jackson's motions. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if the pleadings, depositions or affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The opposing party must produce specific facts showing that there remains a genuine issue of material fact for trial; mere assertions or conjecture is not enough to survive summary judgment. *Branson v. Price River Coal Co.*, 853 F.2d 768, 771–72 (10th Cir.1988).

## III. *Plaintiffs' Motion*

■ Plaintiffs seek summary judgment on Jackson's second affirmative defense. In that defense, Jackson alleges:

> The decedent Douglas E. Cook willingly made false statements of fact and/or knowingly concealed certain facts in the application process; that the false statements of fact or concealed facts materially altered the acceptance of risk and the hazard assumed by Jackson; that Jackson was ignorant of the false statements or concealed facts and certainly was not chargeable with the knowledge of those facts; that Jackson relied, to its detriment, on false statements of fact or concealed facts in issuing a policy and therefore appropriately declined to pay benefits.

(Defs.' Answer at 3.)

Plaintiffs argue that, after Cook had admitted in the application that his license had

been revoked, Jackson undertook its own independent investigation, upon which it discovered Cook's conviction for driving under the influence of alcohol. Plaintiffs maintain that, having discovered Cook's involvement with alcohol through its own independent investigation, Jackson was free to investigate the matter to the extent it felt necessary before issuing the policy. Therefore, Plaintiffs assert that Jackson is estopped from claiming reliance on any misrepresentation Cook made in the application as to his involvement with alcohol.

Plaintiffs rely on *Nelson v. Van Schaack & Co.*, 87 Colo. 199, 286 P. 865, 866 (1930). There, the plaintiff sought damages for alleged fraudulent representations by the defendant, a real estate company, principally as to the value of a terrace upon which he had assumed a mortgage. Before assuming the mortgage the plaintiff had conferred with an independent realtor and different friends as to the desirability of the proposition. The plaintiff argued that he had relied on defendant's alleged misrepresentations. In response, the court noted:

> The principal reason why the trial court granted a nonsuit was on account of plaintiff's failure to prove his reliance on defendant's alleged representations....

> ....

> One of the requirements [in an action for fraudulent misrepresentation] is that plaintiff must establish his reliance on such representations. "One cannot secure redress for fraud where he acted in reliance upon his own knowledge or judgment based upon independent investigation." This is the long-established American and English rule, fortified by decisions of the Supreme Court of the United States, and other federal and state courts, for, "Obviously there can be no recovery if the investigation revealed the true facts, so that if the representee was deceived at all he in effect deceived himself."

> ....

> What [the independent realtor and Nelson's friends] did or did not tell him is of little consequence here. It is the fact that he consulted with them and made a personal examination that removes the cre-

dence that otherwise might be given to his allegations of reliance on defendant's representations.

*Id.* at 866 (citations omitted). "If it is established that the representee relied on his own judgment and not on the representor's statements, he cannot recover, even though he was genuinely deceived by the representations and his investigation was of an incomplete or ineffectual nature." 37 C.J.S. *Fraud* § 37 (1943).

The principles upon which *Nelson* rests are still good law. *See Carl D. Underwood Oil & Gas v. Pacific Enter. Oil Co.*, 1992 WL 218995, at *15–16 (10th Cir. Sept. 8, 1992); *French v. Isham*, 801 F.Supp. 913, 921 (D.R.I.1992); *Hart v. Ed–Ley Corp.*, 482 P.2d 421, 423 (Colo.App.1971).[3]

Jackson responds that it cannot be charged with knowing that Cook misrepresented certain aspects of his medical history. It relies on *Barciak v. United of Omaha Life Insurance Co.*, 777 F.Supp. 839, 844 (D.Colo. 1991). In *Barciak*, it was undisputed that the plaintiff failed to disclose pertinent information regarding her health. The plaintiff asserted that, because the insurance company knew that she had had a consultation with a doctor, it should have further investigated the nature of that consultation and, had that been done, the insurance company would have found out the true nature of her medical condition. The court rejected this argument, stating that the information provided by the plaintiff was insufficient to cause a prudent person to investigate Barciak's medical condition. *Id.*

The facts of *Barciak* are distinguishable. Here, Jackson was made aware of Cook's involvement with alcohol through its own independent investigation, upon which it discovered his 1987 DUI conviction. Recognizing a potential risk involving use of alcohol, Jackson then conducted a further investigation, requiring Cook to complete the alcohol use questionnaire in which he was asked additional questions about alcohol treatment. As noted above, Jackson cannot use any misrepresentations made in the questionnaire, as a defense to Plaintiffs' claim for the proceeds of the policy. However, the questionnaire is relevant to show that Jackson conducted its own independent investigation, albeit ineffectual. Even though Jackson may have been genuinely deceived by the representations made in response to the questionnaire, Jackson relied on its own judgment, and not on the statements of Cook in his application, in issuing the policy.

Jackson also cites *Golden Rule Insurance Co. v. Greenfield*, 786 F.Supp. 914 (D.Colo. 1992). There, the insured failed to disclose that she had seen any doctor in the past five years when she had in fact seen a Dr. Clarke in 1988, who had ordered an MRI scan of her lower back. The insured had, however, disclosed in the application that she had surgery in 1983. She argued that, had the insurance company looked into the medical records of that surgery, it would have discovered the 1988 MRI scan and back treatment. The court rejected this argument, finding that it was "uncontroverted that plaintiff relied on the information by defendant on her application and that, had plaintiff known of her visit to Dr. Clarke, it would have inquired further and issued the policy with a rider excluding coverage for defendant's spinal disorder." *Id.*, 786 F.Supp. at 915.

Again, the facts in *Golden Rule* are distinguishable since, in that case, the insurance company relied solely on the information contained in the application and undertook no independent investigation before issuing the policy. For the same reason, *Murray v. Montgomery Ward Life Insurance Co.*, 196 Colo. 225, 584 P.2d 78 (1978), relied on by Jackson, is distinguishable. In that case the

---

**3.** Plaintiffs also cite *Mortimer v. M.D.C./WOOD, INC.*, 854 P.2d 1307 (Colo.App.1992), where homeowners had filed a fraud action against a developer for rescission of sales transactions for their homes. That decision was reversed on appeal, *see* 866 P.2d 1380 (Colo.1994), not because the legal principles discussed above were incorrect, but because the court of appeals erred when it substituted its own factual findings for those of the trial court. Nevertheless, the Colorado Supreme Court reiterated that, in order to establish fraud, a party must prove that a fraudulent misrepresentation of a material fact was made to that party by the opposing party, that the misrepresentee relied upon the misrepresentation and had the right to rely on or was justified in relying on the misrepresentation, and that the reliance resulted in damages. *Id.*, 866 P.2d at 1383.

insurance company had not conducted any independent investigation and had relied solely on the information in the application.

I therefore find that there is no material dispute of fact that Jackson relied on its own independent investigation in relation to Cook's involvement with alcohol when it issued the policy. I grant plaintiffs' motion for summary judgment as to Jackson's second affirmative defense.

### IV. *Jackson's Motion*

Jackson argues that it is entitled to rescind the policy and deny benefits since the policy was issued on the basis of material factual misrepresentations by Cook in the application. In essence, Jackson seeks summary judgment based on its second affirmative defense. Consequently, the issue is the same as that raised in Plaintiffs' motion. In order to establish that it properly declined payment, Jackson must establish that it "relied to its detriment, on the false statement of fact or concealment of fact [in the application] in issuing the policy." *See Hollinger v. Mutual Benefit Life Ins. Co.*, 192 Colo. 377, 560 P.2d 824, 827 (1977). Jackson cannot satisfy this element since, as determined above, it relied on its own judgment as a result of an independent investigation concerning Cook's involvement with alcohol and not on Cook's statements in his application.

Therefore, I deny Jackson's motion for summary judgment. Accordingly,

IT IS ORDERED THAT Plaintiffs' Motion to Strike Defendant's Second and Third Affirmative Defenses or, in the alternative, Motion for Summary Judgment on Defendant's Second and Third Affirmative Defenses, is GRANTED, and

IT IS FURTHER ORDERED THAT Defendant Jackson's Motion for Summary Judgment is DENIED.