Carol COOK and Farmers State Bank, as personal representative of the Estate of Douglas E. Cook, deceased, Plaintiffs,

v.

JACKSON NATIONAL LIFE INSURANCE COMPANY, Defendant.

Civ. A. No. 93–K–739.

United States District Court, D. Colorado.

May 17, 1995.

Donald F. McClary, Epperson, McClary, Zorn & McClary, Fort Morgan, CO, Stephen M. Munsinger, Denver, CO, for plaintiffs.

John W. Cook, Hogan & Hartson, L.L.P., Colorado Springs, CO, for defendant.

## ORDER ON DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT

KANE, Senior District Judge.

Before me is Defendant's second motion for summary judgment re bad faith breach of insurance contract, punitive damages and consequential damages. Jurisdiction is based on 28 U.S.C. § 1332. I grant the motion in part and deny it in part.

### I. *Background.*

Plaintiff, Carol Cook, is the mother of the decedent, Douglas E. Cook ("Cook"), and was the contingent beneficiary under a life insurance policy issued by Defendant, Jackson National Life Insurance Company ("Jackson"), on the life of Cook. Farmers State Bank is the personal representative of the estate of Cook and it claims an interest in the proceeding. Mrs. Cook and Farmers State Bank ("Plaintiffs") commenced this action in state court against Jackson asserting a claim for the $300,000 face value of Cook's life insurance policy and, in addition, claims for consequential damages, bad faith breach of an insurance contract and punitive damages. Jackson removed the action on diversity grounds.

The undisputed facts are as follows. On June 19, 1990, Cook met with an independent insurance agent and completed an application ("application") to Jackson for the issuance of a ten-year renewable term life insurance policy with a face amount of $300,000 ("Policy"). The application contained a lengthy medical questionnaire. Cook responded "yes" to only one question regarding prior medical treatment within the last five years referring to a broken hand. Cook answered "no" to questions concerning whether he had: been a patient in a hospital, clinic or medical facility, been advised to limit or cease the use of alcoholic beverages, been counseled for alcohol or drug problems, or attended or joined any organization for alcohol or drug related problems.

In the application under the section relating to existing insurance, Cook was asked whether in the past three years his driver's license had been suspended or revoked or whether he had been charged with more than two violations. Cook answered "yes" and provided his driver's license number. After the application was submitted to Jackson's underwriting department, Jackson requested and obtained a copy of Cook's driving record. It disclosed that he was arrested for driving under the influence of alcohol ("DUI") in 1986 and was convicted of that offense in 1987. As a result of this information, Jackson asked Cook to complete an alcohol use questionnaire in which he was asked addi-

tional questions about alcohol treatment. Cook again denied receiving any treatment.

Based on the information acquired, Jackson's underwriting department remarked in an underwriter' report: "3/87—DUI seem (sic) to be isolated incident [with] some past speeding violation (sic)" (Def.'s Mot.Summ.J. Bad Faith, Ex. D.) Jackson issued the policy on August 2, 1990. On September 4, 1990, Cook changed the beneficiary designation in the policy to provide that Farm Credit Bank of Wichita was to be the primary beneficiary and that Mrs. Cook was to be the contingent beneficiary. Farm Credit Bank of Wichita later disclaimed any interest in the proceeds of the policy and now Mrs. Cook is the sole beneficiary.

On June 6, 1992, Cook was killed in a single-car accident outside Fort Morgan, Colorado. Cook was a passenger and had a blood alcohol content of 0.198. Because Cook died within two years from the date of the issuance of the policy, Jackson conducted a routine review and obtained Cook's medical records and other documents, including records from Centennial Mental Health Center ("Centennial"). These records, coupled with other information, reflect, *inter alia,* that Cook had, upon court order following his 1987 DUI conviction, entered an alcohol treatment program at Centennial, that he had another DUI arrest on January 1, 1985 with a blood alcohol content of 0.0128, but was not convicted, and that as part of his DUI sentence, he was required to attend and did attend two Alcoholics Anonymous meetings per month for six months. In addition, the Centennial records reflect that, shortly after he completed his 1987 DUI treatment program, he attended counselling ostensibly for his marital problems, but which encompassed counselling focussed on his drinking problem.

Jackson denied the life insurance benefits of the policy based upon the material misrepresentations made by Cook. Jackson maintained that had the underwriting department known the true facts of Cook's medical condition, it would not have issued the Policy.

## II. First Ruling on Motions for Summary Judgment.

On March 2, 1994, I granted judgment to Plaintiffs on Jackson's second affirmative defense that Cook made misrepresentations of facts in the application process on which Jackson relied to its detriment in issuing the Policy. *Cook v. Jackson Nat'l Life Ins. Co.,* 844 F.Supp. 1410, 1414 (D.Colo.1994). I found there was "no material dispute of fact that Jackson relied on its own independent investigation in relation to Cook's involvement with alcohol when it issued the policy." *Id.* I denied Jackson's motion for summary judgment, based on its second affirmative defense, as to all claims filed by Plaintiffs. *Id.*

Plaintiffs' first cause of action is for judgment in favor of Carol Cook against Jackson for the proceeds of the Policy. Plaintiffs' second cause of action is for special and consequential damages arising from the forced sale of Cook's farm as a result of Jackson's failure to pay the proceeds of the Policy to the mortgage company, a named beneficiary which required the insurance in connection with Cook's loan. Plaintiffs' third cause of action pertains to their claim of bad faith against Jackson in connection with its denial of payments of the proceeds of the Policy.

Jackson concedes my ruling on its second affirmative defense effectively entitles Plaintiffs to recover on the first cause of action for the proceeds of the Policy. Jackson's second motion for summary judgment focuses exclusively on the second and third causes of action.[1]

## III. Summary Judgment Standard.

"Summary judgment is appropriate if 'there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law.'" *Hagelin for President Committee v. Graves,* 25 F.3d 956, 959 (10th Cir.1994) (quoting Rule 56(c)). "In applying this standard, we construe the factual record and reasonable inferences therefrom in the light most favorable to the party

---

1. I admonish against Jackson's approach of filing consecutive motions for summary judgment when it could have addressed all issues in response to Plaintiff's initial motion. Such practice results in needless duplication of the resources of clients, attorneys and the court.

opposing summary judgment." *Blue Circle Cement, Inc. v. Board of County Comm'rs,* 27 F.3d 1499, 1503 (10th Cir.1994).

" 'The moving party carries the burden of showing beyond a reasonable doubt that it is entitled to judgment. . . .' " *Baker v. Board of Regents,* 991 F.2d 628, 630 (10th Cir.1993) (quoting *Ewing v. Amoco Oil Co.,* 823 F.2d 1432, 1437 (10th Cir.1987). "Rule 56, however, imposes no requirement on the moving party to 'support its motion with affidavits or other similar material *negating* the opponents' claim." *John Hancock Mut. Life Ins. Co. v. Weisman,* 27 F.3d 500, 503 (10th Cir. 1994) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

"Once the moving party shows it is entitled to summary judgment, the burden shifts to the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.' " *Kendall v. Watkins,* 998 F.2d 848, 850 (10th Cir.1993) (quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc,* 912 F.2d 1238, 1241 (10th Cir.1990)), *cert. denied,* —— U.S. ——, 114 S.Ct. 1075, 127 L.Ed.2d 392 (1994). "[T]he nonmoving party may not rest upon mere allegations or denials, but must set forth specific facts showing a genuine issue for trial, relying on the types of evidentiary materials contemplated by Rule 56." *John Hancock,* 27 F.3d at 503.

"To be a 'genuine' factual dispute, there must be more than a mere scintilla of evidence. To avoid summary judgment, the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. Summary judgment may be granted if the evidence is merely colorable or is not significantly probative." *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1539 (10th Cir.1993) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 250–51, 106 S.Ct. 2505, 2511, 2511–12, 91 L.Ed.2d 202 (1986)).

"[T]he relevant inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Bingaman v. Kansas City Power & Light Co.,* 1 F.3d 976, 980 (10th Cir.1993) (quoting *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2511–12).

### IV. *Merits.*

#### A. *Consequential Damages.*

 Jackson seeks summary judgment on Plaintiffs' second cause of action for consequential damages arising out of Jackson's breach of the Policy. In order for consequential damages to be recoverable in a breach of contract case, the plaintiff must establish the defendant had reason to foresee such damages at the time the contract was made. *Husband v. Colorado Mountain Cellars, Inc.,* 867 P.2d 57, 60 (Colo.App.1993), *cert. denied,* 1994.

 Jackson argues the fact Cook designated Farm Credit Bank as a beneficiary does not of itself show the parties contemplated that failure to pay policy benefits would result in the loss of a farm or other loan collateral. Jackson maintains even if the designation of a bank as a life insurance beneficiary was suggestive of a loan, it did not confer knowledge of the amount of the loan, its terms or forfeiture provisions or the nature or value of the security or collateral given for the loan, "all of which are necessary to bring the consequential damages sought by plaintiffs here within the contemplation of the parties at the time the contract was made." (Def. Jackson's Reply Br. at 9.)

Jackson attaches the affidavit of an assistant vice president of underwriting in support of its assertion that Cook's insurance application did not contain any description of the Farm Credit Bank of Wichita or why it was designated as a beneficiary and that the first time Jackson "heard anything about the circumstances of the designation of the beneficiary was after Mr. Cook died and a claim was commenced." (*Id.,* Ex. B ¶¶ 4–5.)

Plaintiffs argue it is fallacious for Jackson, an experienced insurance company, to suggest it did not know why the Farm Credit Bank was chosen as a beneficiary since it must have known "individuals do not designate lending institutions as their beneficiary out of love and affection of [sic] their creditors, but only in such cases as insurance may be required in connection with a loan by that

institution." (Pls.' Ans.Br.Def.'s Second Mot. Summ.J. at 5.)

Plaintiffs also refer to the fact that Jackson was given further specific notice, before its election to deny payment of the policy proceeds, that denial of payment would result in the forced sale of the farm properties. As Jackson correctly points out, this notification by Plaintiffs after Cook's death has no bearing on the issue since the damages must have been within the contemplation of the parties at time the contract was made. *See Husband,* 867 P.2d at 60.

Jackson maintains Plaintiffs offer no evidence in the form of specific facts that Jackson knew at the time of issuance of the policy of the nature or details of Farm Credit Bank's involvement, nor of the loan or its forfeiture terms. Accordingly, Jackson seeks judgment as a matter of law on the second cause of action for consequential damages arising out of the forced sale of the farm properties.

"Under Colorado law, the test for consequential damages for breach of contract is essentially one of foreseeability." *Duffield v. First Interstate Bank of Denver,* 13 F.3d 1403, 1406 (10th Cir.1994). "Damages must be such as may reasonably be supposed to have been within the contemplation of the parties to the agreement at the time of the execution thereof, and the natural and proximate consequences of a breach thereof." *Uinta Oil Refining Co. v. Ledford,* 125 Colo. 429, 244 P.2d 881, 885 (Colo.1952).

Here the complaint alleges the Policy was obtained by virtue of the requirement of the Farm Credit Bank of Wichita in connection with a loan obtained by Cook from that bank which loan was also secured by a deed of trust against various farm properties owned by Cook. (Compl. at 3, ¶ 2.) Further, the complaint alleges when Jackson gave notice to Farm Credit Bank of Wichita of its refusal to honor the Policy, that bank gave notice of its election to pursue its rights under a lien by virtue of the deed of trust on the farm properties, thus abandoning any claim it may have had as primary beneficiary under the policy. (*Id.* ¶ 3.) Thereafter the Farm Credit Bank of Wichita required Plaintiffs to have a forced sale of the farm properties

subject to the deed of trust. (*Id.* ¶ 4.) Plaintiffs allege as a result of the forced sale Carol Cook suffered "the extra expense of the sale and commissions, [and] additional loss and damages in an amount to be determined...." (*Id.* ¶ 5).

Summary judgment is appropriate if the pleadings, *inter alia,* "show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "In applying this standard, we construe the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Blue Circle Cement, Inc. v. Board of County Comm'rs,* 27 F.3d 1499, 1503 (10th Cir.1994).

Construing the record and reasonable inferences therefrom in a light most favorable to Plaintiffs, Jackson has not shown beyond reasonable doubt that it is entitled to judgment on the issue of consequential damages. The fact that the Farm Credit Bank was a named beneficiary creates a question of fact whether Jackson, an experienced insurance company, had no notice that the Policy was required in connection with a loan by that institution. I find no authority to support Jackson's contention that in order for the damages to be foreseeable, Jackson must have had knowledge of the precise terms of the loan, including its forfeiture terms at the inception of the Policy.

I therefore deny Jackson's motion for summary judgment on the second cause of action for consequential damages.

**B.** *Bad Faith.*

 Jackson argues Plaintiffs do not satisfy the applicable standard of proof for establishing bad faith in a first party insurance setting.

[T]he appropriate standard for determining the presence or absence of bad faith dealing by an insurer with regard to a claim of its insured consist[s] of two parts: "the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim."

*Travelers Ins. v. Savio,* 706 P.2d 1258, 1275 (Colo.1985) (en banc) (quoting *Anderson v. Continental Ins. Co.,* 271 N.W.2d 368, 376 (Wis.1978)).

Jackson seeks summary judgment on Plaintiffs' bad faith claim for punitive damages, asserting that it did not act unreasonably in denying the claim nor with knowledge or reckless disregard of its alleged unreasonableness. Plaintiffs argue because I have already determined Jackson could not have properly denied their claim, and because the test for an insurer's duty of good faith is "one of reasonableness under the circumstances," *Brewer v. American & Foreign Ins. Co.,* 837 P.2d 236, 238 (Colo.App.1992), issues of material fact remain as to the reasonableness of Jackson's denial and as to whether it acted in reckless disregard of its unreasonableness.

Jackson replies Plaintiffs have failed to demonstrate any facts indicating bad faith conduct by Jackson. It notes "reasonable basis" under *Savio,* does not require that the insurer prevail on the issue of coverage. *See Brandon v. Sterling, Colo. Beef Co.,* 827 P.2d 559, 561 (Colo.App.1991), *cert. denied,* 1992. Moreover, "disagreement over the terms of a contract ... is insufficient to state a claim for bad faith." *National Union Fire Ins. Co. v. Emhart Corp.,* 11 F.3d 1524, 1534 (10th Cir.1993).

Jackson asserts, in denying the policy proceeds, it relied on an ample body of law supporting the propriety of denying insurance benefits based upon material misrepresentations in the insurance application. *See Hollinger v. Mutual Benefit Life Ins. Co.,* 192 Colo. 377, 560 P.2d 824, 827 (1977); *Barciak v. United of Omaha Life Ins. Co.,* 777 F.Supp. 839, 844 (D.Colo.1991). Jackson maintains although my earlier decision distinguishes these cases on the facts, before that decision, there was a dearth of case law in Colorado and the Tenth Circuit regarding the effect of an insurer's independent investigation of answers on the insurance application and only a few Colorado cases addressing the effects of independent investigation in other non-insurance contexts. *See, e.g., Nelson v. Van Schaack & Co.,* 87 Colo. 199, 286 P. 865, 866 (1930). Other jurisdictions have held the fact that an insurer has conducted an independent investigation does not absolve the applicant from telling the truth and does not lessen the insurer's right of reliance on the insurer's answers. *See* 12A John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 7296 (1981).

Jackson attaches the affidavit of the claims examiner who investigated and processed Plaintiffs' claim, describing the sequence of events in the investigation and the decision by the claim review committee to deny the claim based upon the material misrepresentations made by Cook. The affidavit indicates the investigation and decision-making process were reasonable and without reckless disregard for the validity of Plaintiffs' claim. The affidavit is uncontradicted by any specific facts introduced by Plaintiffs.

Jackson has met its burden of showing the absence of any issue of material fact with regard to the issue of bad faith. Plaintiffs therefore have the burden of coming forward with specific facts showing a genuine issue for trial as to the elements essential to Plaintiffs' cause of action for bad faith. *See National Union Fire Ins. Co. v. Emhart Corp.,* 11 F.3d at 1528. To sustain this burden, Plaintiffs must designate specific facts showing that there is a genuine issue for trial. *Id.*

The only "fact" Plaintiffs have designated is my earlier determination that Jackson could not rely on its second affirmative defense of material misrepresentation to deny the benefits of the policy. This finding, although concededly entitling Plaintiffs to recover on their first cause of action for the proceeds of the Policy, is insufficient to show there is a genuine issue for trial on the question of bad faith. *See Brandon v. Sterling Colorado Beef Co.,* 827 P.2d at 561.

Plaintiffs offer no evidence to show Jackson's conduct in denying life insurance benefits based on Cook's misrepresentations was without a reasonable basis or that Jackson knew or recklessly disregarded the fact that no reasonable basis existed for denying the claim. *See id.* Accordingly, Jackson is entitled to judgment as a matter of law on the third cause of action. *See id.*

### V. *Conclusion.*

I deny Jackson's motion for summary judgment on the second cause of action for consequential damages and grant the motion on the third cause of action for bad faith and punitive damages.