# Third District Court of Appeal

## State of Florida

Opinion filed August 9, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-1384
Lower Tribunal No. 20-23761 CC
_____

**Jose Ramos Rodriguez,**
Appellant,

vs.

**The Responsive Auto Insurance Company,**
Appellee.

An appeal from the County Court for Miami-Dade County, Lawrence D. King, Judge.

Christian Carrazana, P.A., and Christian Carrazana, for appellant.

The Vaccaro Law Firm, P.A., and Charles L. Vaccaro (Davie), for appellee.

Before EMAS, MILLER, and LOBREE, JJ.

MILLER, J.

Appellant, Jose Ramos Rodriguez, challenges a final summary judgment rendered on the basis that appellee, The Responsive Auto Insurance Company, properly rescinded his insurance policy because his application contained material misrepresentations. On appeal, Rodriguez contends Responsive was estopped from relying upon the falsity of his answers to avoid liability because the agent preparing the application completed the relevant fields without first eliciting his input. Adhering to the seminal Florida Supreme Court decision in All Florida Surety Co. v. Coker, 88 So. 2d 508 (Fla. 1956), along with other supporting authorities, we affirm the well-reasoned decision under review.

## BACKGROUND

Rodriguez, a Lyft driver, applied for an automobile insurance policy from Responsive. The application contained a section entitled, "NOTICE TO APPLICANT: READ THIS SECTION CAREFULLY," which required answers to the following questions:

Is (are) any vehicle(s) listed on this application used for hire (taxi, limo, etc.), commercial or business purposes, delivery (pizza, newspaper, etc.), or used in the course or scope of your employment other than traveling to and from work?

Are you or any drivers or residents employed in the livery, delivery, limousine or taxi service, including operators employed to transport nursery or school children, migrant workers, hotel/motel guests, patients or members of a van pool?

2

Both questions were answered in the negative, and, elsewhere in the application, Rodriguez omitted his occupational and employment information. He then electronically signed and dated the application. In doing so, he certified:

> I have read each of the questions . . . and answered all questions truthfully. I realize that any incorrect information may constitute a material misrepresentation, which may result in my Insurance coverage being voided or my claim being denied.
>
> . . . .
>
> . . . The applicant(s) represents the statements and answers made in this application to be true, complete and correct and agrees that any policy may be issued or renewed in reliance upon the truth, completeness and correctness of such statements and answers. The applicant(s) further understands that falsity, incompleteness, or incorrectness may jeopardize the coverage under such policy so issued or renewed in accordance with Section 627.409, [Florida Statutes].
>
> . . . .
>
> . . . I hereby state that each vehicle listed on this application and any vehicle endorsed to my policy at a later date is not and will not be used for business or commercial purposes. Including, traveling to multiple job location[s] in a single day, transporting patients, clients, merchandise, supplies, tools or employees or making deliveries or pickups. I further state that I am not paid mileage, gas, maintenance, insurance nor do I receive any reimbursement or compensation from my employer and do not claim a tax deduction for business use of any vehicle listed on this policy. During the policy term, if I begin using any of the insured vehicles for business purpose[s] I will notify the company within 14 days. Business use represents an unacceptable risk in our private passenger auto program.

Responsive issued an insurance policy, and the following month, Rodriguez was involved in an automobile accident. After obtaining medical treatment, he executed an assignment of benefits in favor of his medical provider. The medical provider then submitted a claim for benefits to Responsive on his behalf.

While investigating the claim, Responsive learned Rodriguez was a Lyft driver, and he used his vehicle for business purposes. Responsive refused to pay the claim, rescinded the policy, and refunded all premium payments and policy fees.

The medical provider filed a declaratory action against Responsive. Litigation commenced, and Rodriguez was substituted as party plaintiff. The parties subsequently filed competing motions for summary judgment. Relying upon the inaccuracies in the application, Responsive sought to avoid liability on material misrepresentation grounds. Rodriguez, in turn, argued that Responsive was estopped from avoiding liability because the preparing agent completed the relevant fields on her own initiative.[1] The trial court conducted a hearing on the motions, at the conclusion of which it granted

[1] The agent attested she translated the entire application and transcribed Rodriguez's answers verbatim.

4

summary judgment in favor of Responsive by way of a carefully crafted thirteen-page final summary judgment order. The instant appeal ensued.

## STANDARD OF REVIEW

We conduct a de novo review of a final summary judgment. Feldman v. Schocket, 47 Fla. L. Weekly D1930, D1930–31 (Fla. 3d DCA Sept. 21, 2022). This analysis is guided by Florida's so-called "new" summary judgment standard, under which the trial court should only deny summary judgment where there is a genuine dispute as to a "material fact" and "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." In re Amends. to Fla. Rule of Civ. Proc. 1.510, 317 So. 3d 72, 75 (Fla. 2021) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

## ANALYSIS

"Florida law . . . gives an insurer the unilateral right to rescind its insurance policy on the basis of misrepresentation in the application of insurance." Gonzalez v. Eagle Ins. Co., 948 So. 2d 1, 2 (Fla. 3d DCA 2006). To this end, section 627.409, Florida Statutes (2020), provides, in relevant part:

> (1) Any statement or description made by or on behalf of an insured or annuitant in an application for an insurance policy or annuity contract, or in negotiations for a policy or contract, is a representation and not a warranty. Except as provided in

subsection (3), a misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under the contract or policy only if any of the following apply:

(a) The misrepresentation, omission, concealment, or statement is fraudulent or is material to the acceptance of the risk or to the hazard assumed by the insurer.

(b) If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss.

Under this statutory provision, a misstatement or omission need not be intentional. It "must only be material." Nationwide Mut. Fire Ins. Co. v. Kramer, 725 So. 2d 1141, 1142 (Fla. 2d DCA 1998). "This . . . is consistent with the general principle in contract law that, to obtain rescission of a contract, based upon misrepresentation, it is not necessary that 'the party making the misrepresentation should have known that it was false.'" Universal Prop. & Cas. Ins. Co. v. Johnson, 114 So. 3d 1031, 1035 (Fla. 1st DCA 2013) (quoting 27 Richard A. Lord, Williston on Contracts § 69:49 (4th ed. 2023)). A misrepresentation will be deemed material "if it does not enable a reasonable insurer to adequately estimate the nature of the risk in determining whether to assume the risk." Singer v. Nationwide Mut. Fire Ins. Co., 512 So. 2d 1125, 1128–29 (Fla. 4th DCA 1987).

6

The relationship between an insured and insurer is contractual in nature, and the courts of this state have long held that a signatory is bound by a written contract. See Jefferson Ins. Co. v. Fischer, 166 So. 2d 129, 130 (Fla. 1964); see also Kramer, 725 So. 2d at 1143; Citizens Prop. Ins. Corp. v. Eur. Woodcraft & Mica Design, Inc., 49 So. 3d 774, 778 (Fla. 4th DCA 2010); Qubty v. Nagda, 817 So. 2d 952, 958 (Fla. 5th DCA 2002); Allied Van Lines, Inc. v. Bratton, 351 So. 2d 344, 347–48 (Fla. 1977).

Nearly seventy years ago, the Florida Supreme Court explained the limited exceptions engrafted on the general rule in All Florida Surety Co. v. Coker, 88 So. 2d 508 (Fla. 1956):

> [A] person who, having the capacity and an opportunity to read a contract, is not misled as to its contents and who sustains no confidential relationship to the other party cannot avoid the contract on the ground of mistake if he signs it without reading it, at least in the absence of special circumstances excusing his failure to read it.

Id. at 510–11. The Coker court further observed that a party "cannot defend against . . . enforcement [of the contract] on the ground that he signed it without reading it, unless he aver[s] facts showing circumstances which prevented his reading the paper, or was induced by the statements of the other parties to desist from reading it." Id. at 510 (citing Morgan v. Mengel Co., 242 S.W. 860, 862 (Ky. 1922)). In doing so, it reasoned, "[t]he courts will not ordinarily protect those who with full opportunity to do so will not

7

protect themselves." <u>Coker</u>, 88 So. 2d at 510. In other words, "[i]f a man acts negligently and in such a way as to justify others in supposing that the writing is assented to by him, he will be bound both by law and in equity, even though he supposes the writing is an instrument of an entirely different character." <u>Id.</u>

The principles espoused in <u>Coker</u> endure today. "Florida law has never excused a party from a contract simply because it failed to read the contract terms." <u>Paul Gottlieb & Co. v. Alps S. Corp.</u>, 985 So. 2d 1, 7 (Fla. 2d DCA 2007). Consistent with this adage, this court and others have determined that lack of linguistic proficiency or literacy, standing alone, are not legal bases to avoid enforcement of a contract. <u>See</u> <u>Kendall Imps., LLC v. Diaz</u>, 215 So. 3d 95, 101 (Fla. 3d DCA 2017) ("[T]he burden squarely rested on [the signatory] to seek clarification of the terms of these documents" prior to signing); <u>see also</u> <u>Rivero v. Rivero</u>, 963 So. 2d 934, 938 (Fla. 3d DCA 2007) (quoting <u>Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Benton</u>, 467 So. 2d 311, 313 (Fla. 5th DCA 1985)) ("If a person cannot read the instrument, it is as much his duty to procure some reliable person to read and explain it to him, before he signs it, as it would be to read it before he signed it if he were able to do so . . . .").

Against this landscape, we examine the allegations in the instant case. The summary judgment record established the application contained multiple misrepresentations. The litigation adjuster attested Responsive was unaware that Rodriguez was a Lyft driver or that the vehicle would be used for business purposes. He further stated that "[i]f the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy." § 627.409(1)(b), Fla. Stat. His affidavit was undisputed and sufficiently satisfied the statutory prerequisites necessary to succeed on a material misrepresentation defense.

Rodriguez conceded he certified and signed the application. He claimed, however, that the actions of the agent relieved him of the duty to learn the contents of the application prior to affixing his signature. In this vein, Rodriguez cited precedent for the proposition that an insured may be absolved of wrongdoing if the agent actively concealed information or otherwise induced an insured to supply incorrect facts. See, e.g., Mass. Bonding & Ins. Co. v. Williams, 167 So. 12, 14 (Fla. 1936); Columbian Nat. Life Ins. Co. v. Lanigan, 19 So. 2d 67, 70 (Fla. 1944); Nat'l Emblem Ins. Co. v. Gillingham, 241 So. 2d 707, 710–11 (Fla. 4th DCA 1970). A close

9

examination of the summary judgment record renders this line of authority inapposite.[2]

Here, Rodriguez claimed in his affidavit that the agent filled in blank fields without obtaining sufficient information. He did not attest that he apprised the agent of the correct information or was prevented or induced to refrain from reading the application. Nor did he claim the factual inaccuracies were obscured or the agent sought to deceive the insurer. See Allied Van Lines, 351 So. 2d at 347–48.

Under these circumstances, we conclude that the trial court correctly found that the affidavit-based assertions, without more, were insufficient to override Rodriguez's duty to learn the contents of the application prior to affixing his signature. See Addison v. Carballosa, 48 So. 3d 951, 954 (Fla. 3d DCA 2010) ("[I]t is generally the duty of a party to a contract to learn and understand its contents before he signs it."); Pepple v. Rogers, 140 So. 205, 208 (Fla. 1932) ("It is generally the duty of every party to learn and know the contents of a contract before he signs and delivers it."); Parham v. E. Bay Raceway, 442 So. 2d 399, 400–01 (Fla. 2d DCA 1983) ("[I]t is generally the

---

[2] Williams, cited by Rodriguez is distinguishable from the case at hand. In Williams, the insured argued he disclosed the material information, but the agent failed to properly record his answer. Id. at 13–14. In this case, Rodriguez did not assert he revealed his employment information, and the application mandated disclosure in a myriad of places.

duty of a party to learn and understand the contents of a proposed contract before he signs it."). Indeed, to hold otherwise would unleash upheaval in the certainty of contracts. See Gainesville Health Care Ctr., Inc. v. Weston, 857 So. 2d 278, 288 (Fla. 1st DCA 2003) ("To sanction such a result would be to render contracts worthless as a tool of commerce."). Accordingly, we affirm the judgment in all respects.[3]

Affirmed.

---

[3] Our holding is consistent with decisions in several other jurisdictions. See, e.g., Pedersen v. Chrysler Life Ins. Co., 677 F. Supp. 472, 475 (N.D. Miss. 1988) ("[U]nless a party was induced not to read the contract or have it read to him by fraudulent representations made by another party, he will be required to abide by its terms."); Prudential Ins. Co. of Am. v. Perry, 174 S.E.2d 570, 574 (Ga. Ct. App. 1970) ("It should be observed that the applicant is bound by the answers recorded on the application, whether written by him or by the agent, absent any fraud on the part of the agent in deceiving him as to what was in fact written down as answers, or in preventing him from reading and ascertaining what was written down."); Miller v. Plains Ins. Co., 409 S.W.2d 770, 772–73 (Mo. Ct. App. 1966) (citations omitted) ("[Insured] was legally bound to know the contents of the application she signed, whether she read it or not, and this is not affected by the fact she relied upon or trusted the agent to prepare the application for the policy."); Parker v. Prudential Ins. Co. of Am., 900 F.2d 772, 777–78 (4th Cir. 1990) (quoting Peoples Life Ins. Co. v. Jerrell, 318 A.2d 519, 522 (Md. 1974) ("[F]ailure to disclose information is grounds for rescission only if the application form was 'reasonably designed to elicit from the applicant the information which was material to the risk.'"); Barciak v. United of Omaha Life Ins. Co., 777 F. Supp. 839, 844 (D. Colo. 1991) ("[Plaintiff's] alleged lack of English language proficiency does not vitiate his knowing concealment or misrepresentation of material facts.").